Donald SJOGREN et al.

v.

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY et al.

No. 96–49—Appeal.

Supreme Court of Rhode Island.

Dec. 4, 1997.

---

Gregory A. Madoian, Providence, for Plaintiffs.

Charles Nystedt, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Does an insurance policy's definition of the term "relative" include a stepson from a former marriage? On the facts of the case before us, we conclude that it does. The plaintiffs, Donald Sjogren, Vida Sjogren, and Dean Ramos, appealed to the Supreme Court from a summary judgment entered in the Superior Court in favor of the defendant, Metropolitan Property and Casualty Insurance Company and Affiliates (Metropolitan). The plaintiffs brought their complaint after Metropolitan denied their claim under the uninsured motorists provisions of an automobile insurance policy issued by Metropolitan. For the reasons discussed below, we sustain the plaintiffs' appeal and reverse the judgment of the Superior Court.

### Facts and Procedural History

Dean Ramos (Dean), born December 20, 1970, is the natural child of Maurice Ramos (Maurice) and Faith Blood. Maurice later married Vida Sjogren (Vida), and Dean thereby became Vida's stepchild. The three lived together as a family for over ten years until Vida and Maurice divorced in the early 1990s. Vida subsequently married Donald Sjogren. The plaintiffs presented evidence to the trial court that Dean continued to live with Vida after her divorce from Maurice and that Vida continued to serve as a mother figure to Dean and to provide care and support for him.

The dispute in the instant case arose as a result of a pedestrian hit-and-run accident that occurred in early April 1993. While attempting to cross Atwells Avenue in Providence, Dean was struck by a car, the driver of which fled the scene of the accident and was never identified. At the time of the accident, Vida and Donald Sjogren (Sjogrens) were the named insureds on an automobile insurance policy (Metropolitan policy) issued by Metropolitan. The Sjogrens' agent reported the accident to Metropolitan on or about April 15, 1993, and plaintiffs presented a claim of loss to Metropolitan under the uninsured motorists provisions of the Metropolitan policy. Their claim was denied on the ground that Dean was not a relative of the Sjogrens as defined by the Metropolitan policy and was therefore not covered under its uninsured motorists provisions.

After their claim of loss was denied, plaintiffs filed a three-count complaint against Metropolitan in the Providence County Superior Court on September 2, 1994. The plaintiffs sought a declaratory judgment that Dean is a relative of the Sjogrens, they demanded an award for Dean's injuries under the Metropolitan policy, and they requested punitive damages. Metropolitan filed a motion for summary judgment on March 21, 1995, arguing that Dean was not related to the Sjogrens "by blood, marriage or adoption" and, therefore, could not be the Sjogrens' "relative" as that term was defined by the Metropolitan policy. The plaintiffs did not dispute that Dean was unrelated to the Sjogrens by blood or adoption but contended, rather, that he was related to them, or at least to Vida, by Vida's prior marriage to Dean's biological father. That contention was rejected by the trial justice, and defendant's motion for summary judgment was

granted on May 30, 1995. The plaintiffs appealed.

### Motion for Summary Judgment

■ Summary judgment is an extreme remedy that should be applied cautiously. *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I. 1996). In its review of the granting of a motion for summary judgment, this Court applies the same rules and analysis as the trial justice. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996); *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 19–20 (R.I.1995). We shall sustain the summary judgment only if our review, made in the light most favorable to the nonmoving party, reveals no genuine issues of material fact and if we conclude that the moving party was entitled to judgment as a matter of law. *Accent Store Design*, 674 A.2d at 1225; *Mallane*, 658 A.2d at 20.

### Construction of the Metropolitan Policy

■ The dispositive issue in this case, whether Dean was covered under the terms of the Sjogrens' automobile insurance policy, requires judicial construction of the language of the Metropolitan policy as a matter of law. *Mallane*, 658 A.2d at 20 (citing *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 762 (R.I. 1990)). This Court will not disturb a trial justice's ruling on the issue absent an error of law. *Id.*

■ It is well established that "this Court applies the rules for construction of contracts when interpreting an insurance policy." *Mallane*, 658 A.2d at 20; *Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I.1993); *Malo v. Aetna Casualty & Surety Co.*, 459 A.2d 954, 956 (R.I.1983). The necessary prerequisite to this Court's departure from the literal language of a policy is a finding that the policy is ambiguous. In order to make such a determination of ambiguity, we read a policy in its entirety, giving words their plain, ordinary, and usual meaning. *Mallane*, 658 A.2d at 20; *Sulli-*

*van*, 633 A.2d at 686; *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 551–52 (R.I.1990); *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). We do not engage in "mental gymnastics * * * to read ambiguity into a policy where none is present." *Mallane*, 658 A.2d at 20 (citing *Sullivan*, 633 A.2d at 686). If, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer. *Id.*; *Bartlett v. Amica Mutual Insurance Co.*, 593 A.2d 45, 47 (R.I.1991); *Bush*, 448 A.2d at 784.

■ In the case before us, section IV of the Metropolitan policy describes the uninsured motorists coverage provided therein. The section reads:

> "We will pay **bodily injury damages**, caused by an accident arising out of the ownership, maintenance, or use of an **uninsured highway vehicle**, which **you** or a **relative** are legally entitled to collect from the owner or driver of an **uninsured highway vehicle**. Any other **person occupying a covered automobile** has the same rights as **you**." (Bold in the original.)

Metropolitan did not dispute that the hit-and-run vehicle that struck Dean fell within the definition of an "uninsured highway vehicle." The dispute between the parties has hinged on whether Dean is a "relative" of the Sjogrens for the purpose of coverage under this section of the Metropolitan policy. The Metropolitan policy defines "relative" as follows:

> " **'relative'** means a **person** related to **you** by blood, marriage or adoption, and who also resides in **your** household. **Your** unmarried and unemancipated children, while away from **your** household attending school or in active military service, are considered residents of **your** household. Relative does not include any **person** or the spouse of any **person** who owns a **private passenger automobile**." [1] (Bold in the original.)

---

1. The defendant suggested that Dean might additionally fail to meet the Metropolitan policy's definition of "relative" because, at the time of the accident, he allegedly did not reside with the Sjogrens and may himself have owned an automobile. The defendant's motion for summary judgment, however, was limited to the question of whether Dean met the threshold test of being

The plaintiffs argued that Dean should be considered the Sjogrens' relative because he became related to Vida "by marriage" when his father Maurice married Vida. Because Vida and Dean continued to enjoy a close relationship after Vida's divorce from Maurice, plaintiffs have asserted, Vida and Dean remained related even though Vida was no longer married to Dean's father. The defendant maintained, on the other hand, that even if Dean and Vida had become "related by marriage" when Vida and Maurice married, any such relationship was conclusively terminated by the divorce.

As commonly understood, a relative is "[a] kinsman; a person connected with another by blood or affinity." Black's Law Dictionary 1289 (6th ed.1990). "Affinity" in turn is "the connection existing in consequence of marriage between each of the married persons and the kindred of the other." *Lavieri v. Commissioner of Revenue Services*, 184 Conn. 380, 439 A.2d 1012, 1014 (1981) (quoting *In re Bordeaux' Estate*, 37 Wash.2d 561, 225 P.2d 433 (1950); annot., 26 A.L.R.2d 271). The language of the Metropolitan policy, in defining "relative" to include those related to the insured by marriage, clearly contemplates coverage of such relatives by affinity, many of whom are known more commonly as in-laws but whose ranks also include stepchildren and stepparents. It is a more challenging task to determine if affinal relationships persist after the dissolution of the relevant marriage.

The law in this field is unsettled, and the authorities in other jurisdictions that have addressed this question are divided. Some courts have announced a bright-line rule by which the dissolution of a marriage conclusively terminates all relationships by affinity that it had created. *See, e.g., Demaio v. State Farm Mutual Automobile Ins. Co.*, 534 So.2d 1244 (Fla.Dist.Ct.App.1988) (holding that relationship of affinity between uncle and nephew terminated when uncle and aunt, who was nephew's blood relative, divorced). In general, the cases that have held that steprelatives do not remain related in such circumstances involved situations in which being related would effect a *penalty* upon the

related to the Sjogrens "by blood, marriage or

individuals in question. *See, e.g., Zimmerer v. Prudential Ins. Co. of America*, 150 Neb. 351, 34 N.W.2d 750, 755 (1948) (holding that trial judge was not disqualified from hearing case even though one of the litigants was the brother of the judge's deceased wife); *Lavieri*, 439 A.2d at 1014 (citing similar cases from Connecticut).

Other courts, however, have held that relationships of affinity may survive the termination of the marriage that created them. In the case most similar to the one before us, *Remington v. Aetna Casualty and Surety Co.*, 35 Conn.App. 581, 646 A.2d 266 (1994), the Connecticut intermediate appellate court, sitting en banc, unanimously held that a stepson would be covered as a relative for uninsured motorists purposes if the proper showing of a continuing familial relationship was made as a matter of fact, even though his natural father had died sometime earlier. In a lengthy and considered analysis, the court rejected the defendant insurance company's assertion that affinity terminates with the end of the marriage that created it and pointed to the Supreme Court of Washington's determination that

"there was no absolute principle, nor had one ever existed at common law, that affinity was broken on the death of the spouse whose marriage created it. * * * Rather, the survival of affinal relationships depends on the context in which they are asserted." *Remington*, 646 A.2d at 270 (citing *In re Bordeaux' Estate*, [37 Wash.2d 561] 225 P.2d 433 (1950)).

The Connecticut court concluded that "in the context of underinsured motorist coverage, affinity does not terminate automatically upon the termination of the marriage that created it by the death of the biological parent," *Remington*, 646 A.2d at 271, and noted that its decision was in keeping with the reality that many stepchildren and stepparents maintain close relationships following the death of the child's natural parent. *Id.*

Although the natural parent in *Remington* had died, not divorced the stepparent, other cases have held that "the distinction between death and divorce * * * [is] a distinction

adoption."

without any compelling legal significance." *Lavieri,* 439 A.2d at 1015 (citing *In re Ehler's Estate,* 53 Wash.2d 679, 335 P.2d 823 (1959) (en banc) and *In re Estate of Iacino,* 189 Colo. 513, 542 P.2d 840 (1975)(en banc)). Such a conclusion is equally applicable in the context of the insurance coverage question in the present case. The fact that Maurice and Vida are divorced does not dilute the compelling argument that the bonds between stepparent and stepchild can be as strong as or stronger than those between biological parents and their children. *Cf. Remington,* 646 A.2d at 272 (Freedman, J., concurring) ("[W]e would do a far better service to the development of the law, and would be in keeping with the times, by holding that a stepparent-stepchild relationship, though created by a marriage, endures beyond that marriage, no matter how the marriage is terminated.").

As we noted *ante,* there is no clear or uniform opinion on the question of whether a relationship by affinity persists after the termination of the marriage that created it. The term "relative" has inherent ambiguities, and Metropolitan's explanation that a relative is someone "related to you by blood, marriage or adoption" does nothing to dispel them. The phrase "related by marriage" has no settled, unequivocal definition that would preclude the continuing existence of steprelationships after the divorce or the death of the biological parent. Hence, in keeping with our well established rules for interpreting insurance contracts, an ambiguity will be construed against the insurance company and in favor of the insureds. *Mallane,* 658 A.2d at 20. Accordingly, we hold that Dean is "related by marriage" to Vida under the Metropolitan policy.

In so holding, it is our judgment that, contrary to the defendant's assertion, an avalanche of claims will not now result. First, the insurance policy at issue here provides that such a related-by-marriage stepchild must reside in the household of the insured, thereby restricting coverage to a small number of individuals. Second, such a "relative" is precluded from owning a private passenger automobile. Third, a more explicit definition by an insurer can expressly exclude such postdivorce steprelationships from coverage under a policy.

In conclusion, therefore, we sustain the plaintiffs' appeal, reverse the summary judgment in favor of the defendants, and remand the case to the Superior Court for further proceedings.