**CASCO INDEMNITY COMPANY**

v.

**Kenneth GONSALVES.**

**No. 2003–159–Appeal.**

Supreme Court of Rhode Island.

Jan. 12, 2004.

Mark Reynolds, for Plaintiff.

Ralph R. Liguori, Cumberland, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## O P I N I O N

PER CURIAM.

Can one man's trash be another man's uninsured motor vehicle? We think not. The defendant, Kenneth Gonsalves (Gonsalves), was injured when the carcass of a junked automobile that was perched atop two other junked automobiles fell on him. He appeals from a summary judgment declaring that he cannot collect under the uninsured motorist provision of his automobile insurance contract with the plaintiff, Casco Indemnity Company (Casco). This case came before the Supreme Court for oral argument on October 29, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On December 9, 2000, Gonsalves went to Ruggieri's Auto Parts, Inc. (Ruggieri's), a salvage yard in the Town of West Warwick, to find a used radiator for a car. Gonsalves identified a potential match in an old Plymouth Horizon (Horizon) that was piled on top of two other junked cars. To examine the radiator, he stepped up on the trunk of another car. As Gonsalves reached up to peer under the hood of the Horizon, the Horizon became dislodged and fell on him, pinning his ankles against the car he was standing on and nearly severing his legs.

Gonsalves filed a claim with Casco to collect under the uninsured motorist provision of his policy. The parties have agreed that Ruggieri's owns the Horizon and that Ruggieri's is uninsured. Casco, however, refused to honor the claim, alleging it had no duty to pay Gonsalves because the accident did not arise from the "ownership, maintenance or use of an uninsured motor vehicle," as the policy required. Casco then instituted this declaratory judgment action and moved for summary judgment. The Superior Court granted Casco's motion, finding that because the Horizon was "junk," and not a motor vehicle, the policy does not cover the accident. Gonsalves timely appealed.

## II

### Summary Judgment

It is well established that when reviewing a summary judgment this Court will "examine the matter *de novo* and apply the same standards as those used by the trial court." *JH v. RB*, 796 A.2d 447, 448 (R.I.2002) (quoting *Tavares v. Barbour*, 790 A.2d 1110, 1112 (R.I.2002)). This Court will uphold the summary judgment only "when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law * * *." *Id.*

at 449 (quoting *Sobanski v. Donahue*, 792 A.2d 57, 59 (R.I.2002)). Gonsalves, as the party opposing the motion for summary judgment, carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions. *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996)). Gonsalves may rely on affidavits "to set forth specific facts showing that there is a genuine issue of material fact." *Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 46 (R.I. 2001) (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

The dispositive question before this Court is whether the Horizon is a motor vehicle within the meaning of the insurance contract. When we interpret an insurance contract term "we view the policy in its entirety, affording its terms their 'plain, ordinary and usual meaning.'" *American Commerce Insurance Co. v. Porto*, 811 A.2d 1185, 1192 (R.I.2002) (quoting *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990)). We do not consider the insurer's intended meaning of the contract, "but rather what an ordinary reader of the policy would have understood the policy's terms to mean if he or she had read them." *Id.* Although we will construe the policy in Gonsalves's favor, "we will not engage in mental or verbal gymnastics to hurdle over the plain meaning of the policy's language." *Id.* at 1193.

The insurance contract provides in relevant part that Casco

> "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of

an 'uninsured motor vehicle' because of 'bodily injury' (1) sustained by an 'insured'; and (2) caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'"

The uninsured motorist provision defines "uninsured motor vehicle" as "a land motor vehicle or trailer of any type." The policy addresses the term "motor vehicle" in another provision, the medical payments coverage provision, describing coverage to include injury by "a motor vehicle designed for use mainly on public roads or a trailer of any type."

The term "motor vehicle," as it was used in the insurance contract, is clear. Both the uninsured motorist coverage provision and the medical payments coverage provision of the insurance contract shed light on the definition of "motor vehicle" under the contract. By reading the two provisions together we understand a "motor vehicle" to be a "land motor vehicle" "designed for use mainly on public roads." There is no question that at some point the Horizon was a motor vehicle within the above definition because it was both designed for and, presumably, used "mainly on public roads." The question, then, is whether the Horizon was still a motor vehicle within the meaning of the insurance contract on the date of the accident. We hold that when Gonsalves came to Ruggieri's the Horizon was no longer a "motor vehicle."

At the time Gonsalves contracted with Casco he could not, nor would any "ordinary reader," understand the uninsured motorist provision of his policy to cover damages or injuries incurred from an automobile that has been sold for parts and scrap metal, is missing several important parts, and is found stationed on top of two

other similar automobile hulks.[1] *American Commerce Insurance Co.*, 811 A.2d at 1192. Gonsalves argues that the Horizon was a motor vehicle because it could have been restored. Taking the facts in the light most favorable to Gonsalves, we recognize that the Horizon could have become a *motor vehicle* again at some point. It is clear, however, that at the time of the accident the Horizon was used for spare parts, not for transportation "mainly on public roads." The Horizon could not have been operated legally on a public highway and Gonsalves was reaching toward the Horizon because he wanted to "use" the car as a cadaver for a part he needed for another vehicle. Accordingly, the motion justice did not err in finding that the Horizon was not a motor vehicle, but, rather, "junk."

To support his argument that summary judgment was inappropriate, Gonsalves argues that there be need only "some *nexus* between the motor vehicle and the injury." *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778, 780 (R.I.2000) (quoting *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240, 1242 (R.I.1990)). Gonsalves relies on three recent Rhode Island Supreme Court cases to support his contention: *Liberty Mutual Insurance Co., v. Tavarez*, 754 A.2d 778 (R.I.2000) (holding that a victim killed in a drive-by shooting was covered by the uninsured motorist provision of his insurance policy because the car used in the drive-by was uninsured); *Skaling v. Aetna Insurance Co.*, 742 A.2d 282 (R.I.1999) (upholding damages awarded under an uninsured/underinsured motorist provision to a man who fell off a bridge as he was helping an underinsured driver whose car was stuck on an abandoned railroad bridge); *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240 (R.I. 1990) (holding that the family of a victim shot and killed by an uninsured driver, after getting into a minor accident, was entitled to recover under the victim's uninsured motorists provision). However, the dispositions in *Tavarez; Olivier*, and *Skaling* turned on the "use" of the uninsured motor vehicle, not on whether the machine involved in the accident was a motor vehicle. Gonsalves's argument that there need be only "some nexus" between the injuries and the motor vehicle does not apply to this case because we already have determined that no motor vehicle was involved in the accident.

█ To further support his argument that summary judgment is inappropriate, Gonsalves argues that the definition of "motor vehicle" under the insurance contract is a question of fact and, therefore, summary judgment is not appropriate. A question of fact arises when the terms of a contract are ambiguous. *Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000). The term "motor vehicle" is not ambiguous when applied to the situation before us. For the foregoing reasons we conclude that the Horizon was not a "motor vehicle" as contemplated by Gonsalves's insurance policy at the time of the accident. Therefore, we need not reach the question of whether Gonsalves's injuries arose from the "ownership, maintenance or use" of the Horizon.

---

1. At his deposition Louis Ruggieri testified to the following:

> "Q. So, it's possible that, assuming that you had a battery that had some life in it, that the vehicle would start.
> "A. Possible.

> "Q. So, if I came there with a tire and a door, because foolishly I wanted to recondition this Plymouth Horizon because I think it's going to be worth money some day, I could possibly start the car.
> "A. Possibly."

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.