George KAROUSOS et al.

v.

Jonathan PARDEE et al.

Nos. 2008–174–Appeal, 2008–188–Appeal.

Supreme Court of Rhode Island.

April 23, 2010.

Joseph R. Palumbo, Esq., Middletown, for Plaintiff.

Gerald J. Petros, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

A Superior Court judgment arising from the filing of an abuse-of-process claim and the affirmative defense provided by the anti-SLAPP (strategic litigation against public participation) statute, G.L. 1956 chapter 33 of title 9, has precipitated appeals both from the plaintiffs and the defendants. The Superior Court granted summary judgment in favor of Jonathan Pardee and the remaining defendants[1] (defendants or Pardee)[2] holding that they were immune from civil liability on an abuse-of-process action brought against

---

[1] The complaint listed twelve defendants. Only Jonathan Pardee, Leonard Decof, Alfred Carpionato, Sidney S. Gorham III, and Jay Schochet answered the complaint. The seven remaining defendants, Alexander G. Walsh, Frank DeFruscio, Sr., Richard C. Angelone, Ian McColough, Frank Marinelli, Turner C. Scott, and James F. Hyman, never answered the complaint, but no default judgment ever was entered against them. Only four defendants, Pardee, Schochet, Gorham, and Carpionato, are appellees and cross-appellants before this Court.

[2] We refer to Pardee and the three other appellees and cross-appellants in the singular. We do so for clarity and convenience only.

them because their actions were not subjectively baseless and, therefore, they were cloaked with immunity by the anti-SLAPP statute. In accordance with the statute, the Superior Court awarded Pardee what it deemed to be reasonable attorneys' fees and costs. George and Anna Karousos (collectively Karousos) appeal from the entry of summary judgment and the award of costs and attorneys' fees to Pardee.[3] Pardee cross-appeals the amount of the attorneys' fees awarded to his counsel. We carefully have reviewed the record and considered the arguments raised by the parties. After doing so, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Bellevue Avenue in Newport traverses a genteel section of that city. It is the address of the so-called "mansions" that served as summer homes for those who were this country's financial elite during the gilded age. Bellevue Avenue has become one of the city's showpieces, and is a major tourist attraction. The central dispute in this case is about how a building, known as Fairlawn, at 518 Bellevue Avenue, may be used. In the 1950s, 1960s, and 1970s, Fairlawn was used as a preparatory school and, for part of that time, as Vernon Court Junior College. In 1972, Fairlawn's school use ceased and the building was used exclusively as a residence. The zoning ordinance of the City of Newport permits the use of the building for residential purposes, but considers its use for educational purposes to be nonconforming.

In 1991, Karousos leased the property, with an option to purchase, with the expectation that he could use the building as a culinary school. Karousos based his expectation on a 1989 letter from Newport Zoning Enforcement Officer Guy Weston (Weston) to Fairlawn's then owners, George and Rosalyn Rosner. In that correspondence, Weston indicated that the use of Fairlawn as a school had not been abandoned, even though it had not been used as such since 1972. In Weston's opinion, because the school use was never abandoned, the use of the property as a school remained a legal nonconforming use.

As soon as they leased Fairlawn, Karousos began making substantial improvements to the property, and at one point approached Salve Regina University about a possible affiliation with the school. In 1993, Karousos also began to advertise his intention to open an International Institute for Culinary Arts at Fairlawn. However, the City of Newport objected to the use of Fairlawn as a culinary school, and it initiated a zoning enforcement action against Karousos. In September 1994, Weston sent Karousos a letter, in which he detailed the actions that were necessary before the City of Newport would approve of the use of Fairlawn as a culinary school, including affiliating with Salve Regina.[4] After Karousos complied, Weston further corresponded with Karousos, informing him that the City of Newport now approved of the use of Fairlawn as a culinary school; the enforcement action was dismissed, as well. Subsequently, Karousos exercised his option to purchase Fairlawn.

---

3. Anna Karousos died while this action was pending.

4. In addition to affiliating with Salve Regina, Weston said that Karousos and Salve Regina must comply with several requests, including that Salve Regina license Fairlawn from Karousos, that Salve Regina offer certain courses in the pertinent curriculum, that Salve Regina issue certificates of attendance, and that the facility could not offer public dining.

In December 1994, Jonathan Pardee purchased a lot at the corner of Bellevue Avenue and Marine Avenue, adjacent to Fairlawn. In early 1996, Roger King, a former owner of Fairlawn, informed Pardee that Karousos intended to operate a culinary school there. In March 1996, Pardee, through his attorney Alexander Walsh, inquired of Weston about whether Fairlawn's use as a culinary school was a permissible use under the city's zoning ordinance. In correspondence dated March 19, 1996, Weston wrote that such a use was permitted, and he reiterated his opinion from his 1989 letter and attached a copy of it. On March 28, 1996, Pardee appealed to the Newport Zoning Board (the board), asking that it determine that the use of Fairlawn as a culinary school was not permissible under the zoning ordinance.

The board held multiple hearings between June 1996 and January 1997. After first ruling that Pardee's appeal was timely, the board decided that the school use had been abandoned and that Karousos's use of Fairlawn as a culinary school was an illegal nonconforming use.[5] Karousos appealed the board's decision to the Superior Court. A Superior Court justice reversed the board, ruling that the board had erred when it determined that Pardee's appeal was timely. The hearing justice concluded that the only appealable action was Weston's 1989 letter, and that the time to appeal from that letter had long passed.

On December 12, 1996, while the hearings before the board were still ongoing, Karousos filed an abuse-of-process complaint in the Superior Court against Pardee and eleven other defendants. In his complaint, Karousos alleged that defendants used the March 19, 1996 letter from Weston as a pretext to "appeal" the 1989 and 1994 letters detailing Weston's opinion that the use of Fairlawn as a school was permissible. The defendants, the complaint alleged, long since had waived any right to object to the use of Fairlawn as a school, and their appeal to the board "constitutes a gross misuse of the administration appellate process" for a "wrongful purpose." Pardee and four other defendants answered the complaint; they asserted an affirmative defense that their actions in seeking review of the 1996 letter from Weston to Walsh (Walsh was acting on Pardee's behalf) entitled them to immunity from civil liability, based upon § 9–33–2, the anti-SLAPP statute.

In the spring of 1997, Pardee, along with the same four codefendants, moved for summary judgment, arguing that the anti-SLAPP statute's grant of immunity applied to them because their seeking review of Weston's 1996 letter was not objectively baseless. The motion justice denied the motion, ruling that because Pardee's appeal was deemed untimely by the Superior Court, a question of fact remained about whether Pardee's appeal was objectively baseless. Pardee petitioned this Court for a writ of certiorari, which we denied.

After we denied certiorari, the parties conducted discovery and the case languished for six more years. Jonathan Pardee and Alexander Walsh were deposed, and, at least based in part on their deposition testimony, Pardee filed a renewed motion for summary judgment in March 2003.[6] He again argued that his appeal to the board entitled him to immunity under

---

5. In March 1997, Karousos sold the property at 518 Bellevue Avenue to Salve Regina University. This property currently houses the Pell Center for International Relations and Public Policy.

6. In 2001, Karousos's claim against Leonard Decof was dismissed.

the anti-SLAPP statute because his actions were neither objectively nor subjectively baseless. In the motion, Pardee's primary arguments were that (1) his appeal was not objectively baseless because he was successful before the board and (2) his appeal was not subjectively baseless because he pressed the appeal in an effort to prevent Fairlawn's use as a culinary school, with no ulterior motive. Karousos opposed Pardee's motion for summary judgment. Karousos argued that Pardee's appeal to the board was objectively baseless because it was untimely, and the gross untimeliness of the appeal demonstrated that Pardee tried to use the administrative appeal process for a wrongful purpose in an effort to cause unjust delays to Karousos.

This time, a different hearing justice granted summary judgment to Pardee. In a written decision, the motion justice determined that Pardee's appeal was objectively baseless because, in her opinion, Pardee had no right to appeal any of the letters from Weston. The motion justice ruled that zoning enforcement officers derive their authority to provide advisory information from G.L. 1956 § 45–24–54, but that such information is only for "guidance or clarification." The motion justice reasoned that because such a letter is not binding, it does not aggrieve anyone, and therefore it cannot be appealed. Consequently, she determined that there was no enforceable right to appeal Weston's letter to the board; and the motion justice ruled that Pardee's attempt to be objectively baseless.

■ Nonetheless, the motion justice granted Pardee's summary-judgment motion because she concluded that Pardee's appeal was not subjectively baseless. She reasoned that the stated basis for the appeal, namely, to halt the use of Fairlawn as a culinary school, was the only motive behind Pardee's actions. Finally, the motion justice further found that even if Pardee was not entitled to immunity under the anti-SLAPP statute, the abuse-of-process claim would be unsuccessful because Karousos had failed to offer any ulterior motives for Pardee pursuing the zoning appeal, and thus he could not satisfy the elements of the claim.[7]

In 2007, the parties appeared before yet another Superior Court justice to determine whether Pardee was entitled to costs and reasonable attorneys' fees as provided for in the anti-SLAPP statute. The motion justice determined that the award of costs and attorneys' fees is mandatory with respect to a defendant who prevails at trial or by motion in successfully asserting immunity under the statute. But, she also ruled that the reasonableness of the attorneys' fees and the costs were within the court's equitable discretion. The motion justice ruled that Pardee was entitled only to those costs and attorneys' fees related to their successful motions, but not for the

---

7. An abuse-of-process claim requires proof "(1) that the defendant instituted proceedings or process against the plaintiff and (2) that the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." *Fiorenzano v. Lima*, 982 A.2d 585, 590 (R.I. 2009) (quoting *Palazzo v. Alves*, 944 A.2d 144, 154 (R.I.2008)). Here, the motion justice found that Pardee's stated reason for the appeal to the board was to seek review of Weston's 1996 letter, and in turn, to prevent the use of Fairlawn as a culinary school. If Pardee was successful in his appeal, the property could not have been used to house a culinary school. Therefore, the motion justice held that Pardee appealed to the board to prevent what he believed to be an impermissible use of the land. The motion justice ruled that no ulterior motive reasonably can be drawn from the record and that Karousos was unable to meet his burden on the second element of the abuse-of-process claim.

unsuccessful summary-judgment motion in 1997 or the petition for a writ of certiorari to this Court. Karousos timely appealed the grant of summary judgment and the award of costs and attorneys' fees. Subsequently, Pardee timely filed a cross-appeal on the amount of attorneys' fees and costs.

## II

### Issues on Appeal

On appeal, Karousos raises two arguments. First, he argues that whether defendants' actions were subjectively baseless is a matter for a fact-finder and that the motion justice erred by determining that issue as a matter of law. Second, Karousos seeks to have the award of attorneys' fees vacated if the Court reverses the motion justice's ruling that defendants' actions were not subjectively baseless. In the cross-appeal, Pardee and the remaining defendants argue that they are entitled to the attorneys' fees and costs that they incurred, including those relating to this appeal, as well as those incurred in the unsuccessful summary judgment motion and petition for a writ of certiorari, because these unsuccessful motions were, nonetheless, reasonable.

## III

### Analysis

### A

### Summary Judgment and the Anti–SLAPP Statute

### 1

### Standard of Review

This Court reviews the grant of a motion for summary judgment *de novo*. *Berardis v. Louangxay*, 969 A.2d 1288, 1291 (R.I.2009). We apply the same standard as the motion justice: we view the evidence in the light most favorable to the nonmoving party, and if we conclude that no genuine issue of material fact exists, then the moving party is entitled to judgment as a matter of law, and we affirm the grant of summary judgment. *Id.*

### 2

### The "Sham" Exception

"The anti-SLAPP statute was enacted to prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and legitimate petitioning by granting those activities conditional immunity from punitive civil claims." *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 752 (R.I.2004) (citing *Hometown Properties, Inc. v. Fleming*, 680 A.2d 56, 61 (R.I.1996)). Rhode Island's anti-SLAPP statute derived from several United States Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (*Noerr*), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

In *Noerr*, 365 U.S. at 129, 81 S.Ct. 523, the United States Supreme Court considered whether a railroad association's unfavorable publicity campaign against the trucking business constituted an antitrust violation. The *Noerr* Court held that the actions did not constitute an antitrust violation, but it also noted that "[t]here may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor * * *." *Id.* at 144, 81 S.Ct. 523. Four years later, in *Pennington*, 381 U.S. at 670, 85 S.Ct. 1585, the Court interpreted

*Noerr* to "shield [ ] from [antitrust violations] a concerted effort to influence public officials regardless of intent or purpose."

In *Professional Real Estate Investors, Inc.,* 508 U.S. at 60, 61, 113 S.Ct. 1920, the Court established a "two-part definition" of actions constituting what the *Noerr* Court referred to as a "mere sham." *Noerr,* 365 U.S. at 144, 81 S.Ct. 523. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc.,* 508 U.S. at 60, 113 S.Ct. 1920. Second, the court must inquire whether the lawsuit is subjectively an attempt to interfere directly with an adversary's business through the use of the governmental process rather than an effort to use the outcome of the governmental process for its legitimate ends. *Id.* at 60–61, 113 S.Ct. 1920. If the definition's "two-part definition" is satisfied, the challenged conduct is deemed a sham, and is not entitled to immunity. *Id.* at 61, 113 S.Ct. 1920.

By amending § 9–33–2 in 1995 (P.L. 1995, ch. 386, § 1), the Rhode Island General Assembly essentially adopted the two-part definition of sham participation outlined in *Professional Real Estate Investors,* but broadened its application to contexts beyond the field of antitrust. *See Hometown Properties, Inc.,* 680 A.2d at 60–62. Section 9–33–2(a) provides that "[t]he petition or free speech constitutes a sham only if it is not genuinely aimed at procuring favorable government action, result, or outcome, regardless of ultimate motive or purpose." The statute specifies that a petition or free speech constitutes a sham only if it is both objectively and subjectively baseless, as both of those terms are defined in the statute. Section 9–33–2(a)(1)(2). We will consider separately whether Pardee's appeal was objectively or subjectively baseless.

### a
### Objectively Baseless

■ Section 9–33–2(a)(1) defines objectively baseless as meaning that "no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result, or outcome * * *." It is worth noting that this Court has had several occasions to address this definition, and we never have held that a defendant's actions were objectively baseless. In *Cove Road Development v. Western Cranston Industrial Park Associates,* 674 A.2d 1234, 1239 (R.I.1996), we held that an appeal by landowners and industrial park members of a zoning amendment that was beneficial to a residential real estate developer that could have negatively impacted the industrial park operations "was not objectively baseless, in that an objective litigant could reasonably have expected a successful outcome." In *Hometown Properties, Inc.,* 680 A.2d at 58–59, 64, we held that letters and statements made to the Department of Environmental Management and other state and federal agencies opposed to a proposed landfill were not objectively baseless because, in part, they were grounded in scientific reports and studies.

In *Global Waste Recycling, Inc. v. Mallette,* 762 A.2d 1208, 1210–13 (R.I.2000), we affirmed the grant of conditional immunity under the anti-SLAPP statute to neighbors who made statements to a newspaper that were critical of the handling of flammable materials at a waste recycling plant after a fire broke out at the plant, because the statements were based on personal knowledge and publicly available information, and, therefore, were not objectively baseless. Most recently in *Alves,* 857 A.2d at 754, this Court determined that letters

to the editor of a newspaper that addressed an issue of public concern that was currently under consideration by the local government were not objectively baseless because they were a reasonable attempt to petition the government to address the defendant's concerns.

Indeed, only once, in *Pound Hill Corp. v. Perl*, 668 A.2d 1260, 1264 (R.I.1996) (*Pound Hill*), has this Court determined that there were genuine issues of fact that required the denial of summary judgment and remand to the Superior Court for trial on the issue of whether a defendant's petitioning activities constituted a sham. In *Pound Hill*, a landowner protested a town council's vote to rezone a parcel of land even though the council vote clearly met the ordinances requirement of a three-fifths majority to rezone land. *Id.* at 1262. Additionally, the landowner in that case filed an action in the Superior Court to enjoin the town council from taking further action after the time for filing an appeal had expired, and also sought a further administrative appeal that lacked substantive merit s, and an appeal to the Superior Court that was untimely. *Id.* at 1262, 1264. We vacated a grant of summary judgment on the ground that genuine issues of fact remained about whether the landowner's actions "were objectively baseless and utilized the process itself rather than the intended outcome in order to hinder and delay plaintiff." *Id.* at 1264, 1264–65.

Here, the motion justice determined that Pardee's actions were objectively baseless because she ruled that Pardee had no right to appeal Weston's letters. She reasoned that the letters were purely informational and nonbinding, because such letters were statutorily restricted to be for "guidance or clarification" only. Reasoning that Pardee had not been aggrieved by a decision, and that only an aggrieved party can appeal to the board, the motion justice ruled that Pardee's attempt to appeal lacked a legal basis and was thus objectively baseless.

Before this Court, Pardee argues that even if there was no clear right to appeal Weston's letters under the zoning ordinance, his appeal was not objectively baseless because the board, as well as the motion justice who heard the 1997 motion for summary judgment, agreed that Pardee had the right to appeal from Weston's letter. In other words, he asks how his appeal can be categorized as objectively baseless if the board granted it and the motion justice overruled the Board only because she said the appeal was untimely. In his appeal, Karousos embraces the 2003 motion justice's rationale that Pardee's actions were objectively baseless because Pardee had no statutory right to appeal from any of Weston's letters.

Because we agree with the motion justice's ruling that Pardee's appeal to the zoning board of review did not meet the second prong of the sham exception in that it was not subjectively baseless, we need not, and do not reach the issue of whether his efforts were objectively baseless.

## b

### Subjectively Baseless

Section 9–33–2(a)(2) defines a subjectively baseless activity as that which "is actually an attempt to use the governmental process itself for its own direct effects." However, "[u]se of outcome or result of the governmental process shall not constitute use of the governmental process itself for its own direct effects." *Id.* In *Pound Hill*, 668 A.2d at 1264, this Court addressed the elements of "sham" litigation in a decision that predated the enactment of § 9–33–2's definition of subjectively baseless. The *Pound Hill* Court suggested that courts must inquire into

whether the litigants "utilized the process itself rather than the intended outcome in order to hinder and delay plaintiff." *Pound Hill,* 668 A.2d at 1264.

The 2003 motion justice found that:

"[The Karousoses] do not allege that Pardee's appeal was meant to harass, blackmail, or otherwise serve a purpose other than to contest what the parties appear to have taken to be a binding determination of the Zoning Officer. Rather, their suit is based solely upon the existence of the 1989 letter and Pardee's alleged desire to appeal *that* determination. However, where, as here, a potential litigant's motivation in seeking review of a governmental action, albeit non-binding governmental action, relates solely to the substance of that action, the existence of a previous action to the same effect does not render the appeal any less an attempt to use the outcome or result of the process, rather than the direct effects."

The motion justice determined that in his objection to the motion for summary judgment Karousos was unable to offer any facts that would suggest that Pardee's appeal was motivated by anything other than outcome of the process. She therefore found that Pardee's appeal was not subjectively baseless and ruled that summary judgment must be granted. We agree with the motion justice's conclusions, and affirm the grant of summary judgment.

 A "party opposing a summary judgment motion may not simply rest on the allegations and denials in his or her pleadings, but must prove by competent evidence the existence of a disputed material issue of fact." *Brito v. Capone,* 819 A.2d 663, 666 (R.I.2003) (citing *Accent Store Design, Inc. v. Marathon House,*

*Inc.,* 674 A.2d 1223, 1225 (R.I.1996)). "Therefore, we will affirm the grant of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" *Berardis,* 969 A.2d at 1291 (quoting *Lavoie v. North East Knitting, Inc.,* 918 A.2d 225, 228 (R.I. 2007)).

In his 2003 motion for summary judgment, Pardee submitted the transcripts from two depositions, his own and that of Alexander Walsh, who was Pardee's attorney and an original defendant in this action.[8] In those depositions, both Pardee and Walsh testified that Weston's 1996 letter was appealed because Pardee wanted to prevent Fairlawn's use as a culinary school. In Pardee's words, "I didn't want any commercial activity next to my planned home." Neither Pardee nor Walsh testified to any other motive for pressing the appeal. Once Pardee came forward with this evidence, the burden shifted to Karousos to offer some evidence to establish that Pardee sought the appeal for its direct effects and not for its outcome. *See* § 9–33–2(a)(2); *Brito,* 819 A.2d at 666.

In his opposition to Pardee's 2003 motion for summary judgment, Karousos merely repeated his allegations that, given the long delay between Weston's 1989 letter and his 1996 letter, Pardee could have been motivated only by an interest in causing further burdens and delays to the opening of Karousos's culinary school. Karousos's mere allegations were insufficient to rebut the statements under oath offered by Pardee, and therefore Karousos failed to meet his burden of showing the existence of a disputed material issue of

---

**8.** Although Walsh was a defendant with respect to the abuse-of-process claim, he is not an appellee or cross-appellant in this appeal.

fact. *See Casco Indemnity Co. v. Gonsalves,* 839 A.2d 546, 548 (R.I.2004) ("the party opposing the motion for summary judgment, carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions"). As a result, Pardee's petitioning activity was not a sham and warrants immunity under the anti-SLAPP statute. Consequently, Pardee was entitled to summary judgment in his favor because his appeal to the board was not subjectively baseless.

## B

## Attorneys' Fees and Costs

█ Section 9–33–2(d) provides that "[i]f the court grants the motion asserting the immunity established by this section, * * * the court shall award the prevailing party costs and reasonable attorney's fees, including those incurred for the motion and any related discovery matters." In *Alves,* 857 A.2d at 757, we said that when a party "prevail[s] under the anti-SLAPP statute * * * an award of costs and reasonable attorneys' fees [is] mandatory."

█ The statute does not provide, however, what costs are mandatory or a specific measure of reasonable attorneys' fees. We said in *Alves* that we would not disturb the motion justice's award of attorneys' fees and costs. *Alves,* 857 A.2d at 757. This deference to the lower court justice's determination of what constitutes reasonable attorneys' fees is consistent with our case law. *See Schroff, Inc. v. Taylor-Peterson,* 732 A.2d 719, 721 (R.I.1999) ("the amount awarded in counsel fees is within the sound discretion of the trial judge in light of the circumstances of each case") (citing *Annunziata v. ITT Royal Electric Co.,* 479 A.2d 743, 744 (R.I.1984)).

In *Alves,* 857 A.2d at 747, 757, the motion justice considered affidavits and exhibits concerning the costs and fees incurred in preparing the defendant's response to a complaint for one slander count, two libel counts, and two false-light counts, and adjusted the total award to what she deemed reasonable. The motion justice granted to the defendant, who benefited from conditional immunity, all his fees for defending the slander count but half his fees for defending the libel and false-light claims. *Id.* at 757.

In his 2007 motion for attorneys' fees and costs, Pardee's counsel submitted affidavits and exhibits detailing the attorneys' fees incurred. The 2007 motion justice agreed with Pardee that costs and reasonable attorneys' fees were mandatory under the anti-SLAPP statute but awarded an amount for those fees based upon what she deemed to be equitable. After reviewing Pardee's request, the motion justice determined that Pardee should receive fees only for the successful assertion of anti-SLAPP immunity, and she denied awarding the costs and attorneys' fees that were related to his unsuccessful 1997 motion for summary judgment and the petition for a writ of certiorari that was denied.

In his appeal of that ruling, Pardee argues that the motion justice "committed legal error" when she limited his award of attorneys' fees and costs only to the successful motions. Pardee emphasizes that the statute's only limitation on the amount of the award of attorneys' fees is whether the fees were reasonable; whether the litigant was successful in every tactical move is not a consideration. In particular, Pardee argues that the 1997 summary judgment motion and subsequent petition for a writ of certiorari were reasonable efforts to comply with the statute's purpose in granting conditional immunity at the onset

of litigation, even if those particular efforts did not bear fruit. *See* § 9–33–1 (acknowledging the rise of lawsuits aimed at suppressing legitimate exercises of constitutional rights and declaring that resolutions of such lawsuits "should be resolved quickly with minimum cost to citizens who have participated in matters of public concern"). Pardee contends that the 1997 summary judgment motion and petition for a writ of certiorari both were reasonable because the 1997 motion justice thought the motion had "considerable merit" and "she encouraged the petition" for a writ of certiorari. Additionally, Pardee argues that he is also entitled to attorneys' fees and costs for this appeal.

After considering the record and the motion justice's decision, we hold that the motion justice did not abuse her discretion in finding that Pardee's reasonable attorneys' fees should not include the fees incurred in his unsuccessful 1997 summary judgment motion and his unsuccessful petition for a writ of certiorari to this Court. The motion justice was correct when she concluded that the anti-SLAPP statute's attorneys' fees and costs provision was mandatory, but that the amount of the fees and costs were subject to her determination of what was reasonable. *See* § 9–33–2(d); *Alves,* 857 A.2d at 757; *Schroff, Inc.,* 732 A.2d at 721. Here, the motion justice appropriately considered the affidavits and exhibits submitted by Pardee's counsel in determining the reasonableness of the award of attorneys' fees and costs. We find no fault in her reasoning or her conclusion, and affirm her judgment.

Finally, Pardee asks this Court for attorneys' fees and costs in connection with this appeal. We agree that the anti-SLAPP statute entitles him to reasonable attorneys' fees for the defense of the judgment. We remand this case to the Superi-

or Court for a determination of what those fees and costs should be.

## IV

## Conclusion

The judgment of the Superior Court is affirmed. The record in this case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

ROBINSON, J., concurring in part and dissenting in part.

I readily concur in the Court's holding to the effect that the defendants should not be awarded attorneys' fees in connection with either their unsuccessful first motion for summary judgment or their unsuccessful petition for certiorari; in my view, the anti-SLAPP statute should not be construed as authorizing the payment of attorneys' fees for such unsuccessful quests.

However, I respectfully part company from the majority with respect to its sustaining the Superior Court's later grant of summary judgment in favor of defendants under the anti-SLAPP statute and its consequent award of attorneys' fees. As I understand Rule 56 of the Superior Court Rules of Civil Procedure and the copious body of jurisprudence relative to the summary judgment mechanism, I do not believe that the hearing justice should have granted summary judgment on the basis of her ruling that defendants' actions were "not subjectively baseless." I am firmly convinced that summary judgment is not an appropriate mechanism for resolving controversies that turn on an assessment of the subjective intent of a party—and certainly the issue of subjective baselessness *vel non* involves a determination of subjective intent.[9]

---

9. Furthermore, prescinding from the proce- dural (*i.e.,* Rule 56 of the Superior Court

It is my view that the determination of whether defendants' actions were subjectively baseless (*vel non* ) should have been grist for the mill of a fact-finder. In my judgment, such a determination is simply not susceptible to summary disposition. It is noteworthy that, in his supplemental memorandum in opposition to defendants' successful 2003 motion for summary judgment, Karousos explicitly argued that "[t]he gross untimeliness alone of the defendants' concerted efforts to burden and delay Mr. Karousos from opening his culinary school * * * *creates a triable issue* regarding the propriety of the defendants' actions." (Emphasis added.) In my opinion, it is very much a question of fact as to whether it was defendants' *subjective* intention to legitimately petition the zoning board or whether, alternatively, the petition was a "mere sham." *See* G.L. 1956 § 9–33–2.

Numerous issues (including, I submit, the issue of subjective baselessness *vel non* ) are, by their very nature, inherently incapable of being decided by summary judgment. *See, e.g., Gliottone v. Ethier,* 870 A.2d 1022, 1028 (R.I.2005) ("[I]ssues of negligence are ordinarily not susceptible of summary adjudication, but should be re-solved by trial in the ordinary manner.") (quoting *Rogers v. Peabody Coal Co.,* 342 F.2d 749, 751 (6th Cir.1965)); *see generally Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) ("We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."); *Schmidt v. McKay,* 555 F.2d 30, 37 (2d Cir.1977); *see also Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (holding that whether the gerrymandering at issue was the product of impermissible racial motivation was a disputed fact and that "it was error in this case for the District Court to resolve the disputed fact of motivation at the summary judgment stage"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions * * *."); *Santana v. Rainbow Cleaners, Inc.,* 969 A.2d 653, 658 (R.I.2009); *Pontbriand v. Sundlun,* 699 A.2d 856, 865 (R.I.1997).[10]

Rules of Civil Procedure) issue, I wish to indicate that I am troubled by the provision in the anti-SLAPP statute that requires the awarding of attorneys' fees to a party whose actions have been found to have been "objectively baseless" (provided only that those actions are also found not to have been subjectively baseless). *See* G.L. 1956 § 9–33–2. Our law does not usually grant attorneys' fees to a party that has engaged in "objectively baseless" activity. However, I realize that we are faced here with a statutory mandate, and I also realize "[t]he remedy for a harsh law is not in interpretation, but in amendment or repeal." *State v. Duggan,* 15 R.I. 403, 409, 6 A. 787, 788 (1886).

Anti–SLAPP statutes undoubtedly serve a useful purpose, but it is important that they not improperly thwart the constitutional right of access to the courts. *See Palazzo v. Alves,* 944 A.2d 144, 150 & nn. 10 & 11 (R.I.2008).

**10.** In addition, this Court has on numerous occasions emphasized the drastic nature of the summary judgment mechanism. *See, e.g., Estate of Giuliano v. Giuliano,* 949 A.2d 386, 390 (R.I.2008) ("Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously.") (Internal quotation marks omitted.); *DePasquale v. Venus Pizza, Inc.,* 727 A.2d 683, 685 (R.I.1999) ("This Court has consistently acknowledged that summary judgment is a harsh remedy that must be applied cautiously."); *Sjogren v. Metropolitan Property and Casualty Insurance Co.,* 703 A.2d 608, 610 (R.I. 1997) ("Summary judgment is an extreme remedy that should be applied cautiously.").

It is self-evident to me that the determination of the presence of subjective baselessness *vel non* requires the scrutiny of the human heart and mind.[11] It has long been held that the summary judgment procedural mechanism is ordinarily inappropriate for resolving such issues of intent and state of mind. *See Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379, 381 (R.I.1991) ("If a dispute about intent is apparent in the record, then a genuine issue of material fact has been discovered and it may not be decided in a motion for summary judgment."); *see also Equal Employment Opportunity Commission v. Home Insurance Co.*, 672 F.2d 252, 257 (2d Cir.1982) ("In light of the court's obligation to draw all reasonable inferences against the moving party, summary judgment is rarely appropriate where the moving party's state of mind is a material issue."); *Maiorana v. MacDonald*, 596 F.2d 1072, 1076–77 (1st Cir.1979) ("We are well aware * * * that cases like this one in which state of mind is at issue do not usually lend themselves to summary judgment."); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970) ("The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind."); Brett T. Reynolds, *Comment: Appellate Review of Lanham Act Violations: Is Likelihood of Confusion a Question of Law or Fact?*, 38 Southwestern L.J. 743, 772 (1984) ("Summary judgment is usually inappropriate to resolve disputes concerning state of mind and conflicting interpretations of perceived events because state of mind is normally an inference drawn from facts.").

For the foregoing reasons, it is my opinion that summary judgment was not an appropriate procedural mechanism for evaluating the subjective baselessness component of the anti-SLAPP statute. I would have remanded the case to the Superior Court for fact-finding with regard to the issue of the defendants' subjective intent.

Moreover, this Court has repeatedly emphasized that the "purpose of the summary judgment procedure is issue finding, not issue determination." *Industrial National Bank v. Peloso*, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979); *see also Estate of Giuliano*, 949 A.2d at 391; *Saltzman v. Atlantic Realty Co., Inc.*, 434 A.2d 1343, 1345 (R.I.1981).

11. One can conceive of a case where subjective baselessness is entirely clear—for example where there is an unambiguous admission by a party to that effect. But this is no such case.