NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of:

ASHILI STRICKLAND

AN ADULT

KENT COATS, *Petitioner/Appellant.*

No. 1 CA-CV 19-0462
FILED 2-11-2020

Appeal from the Superior Court in Maricopa County
No. PB2019-090076
The Honorable Susan G. White, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Ellsworth Family Law, P.C., Mesa
By Glenn D. Halterman
*Counsel for Petitioner/Appellant*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1    Kent Coats ("Coats") appeals the superior court's denial of his petition to adopt his former stepchild, Ashili Strickland ("Strickland"). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2    Strickland was born to Janneise Infante ("Mother") and Enoch Strickland ("Father") in 1996.

¶3    Mother and Coats married in 2002. At the age of six, Strickland developed a relationship with Coats, one in which she described Coats as the only father figure in her life. Although Mother and Coats divorced in 2008, Strickland has maintained a close relationship with Coats, and still refers to him as "Dad." According to Coats, Father saw Strickland only once in the last sixteen years and his location is unknown.

¶4    Seeking to "formalize" their relationship, Coats petitioned to adopt Strickland after Strickland turned twenty-two. Strickland and Mother consented to the adoption, and no one contested it.

¶5    The superior court vacated the scheduled hearing and denied the petition, finding that the adult adoption was not authorized under the relevant statute, because (1) although Strickland consented to the adoption, she was over the statutory adoption age limit of twenty-one when the petition was filed, and (2) Strickland was no longer Coats' stepchild at the time of the filing of the petition.

¶6    The superior court denied Coats' motion to amend the court's order, and Coats timely appealed.

**DISCUSSION**

¶7        Under Arizona Revised Statutes ("A.R.S.") section 14-8101(A), an adult may petition to adopt another adult under the following circumstances:

> Any adult person may adopt either another adult person who is at least eighteen years of age and not more than twenty-one years of age and who consents to the adoption or another adult person who is a stepchild, niece, nephew, cousin or grandchild of the adopting person, by an agreement of adoption approved by a decree of adoption of the court in the county in which either the person adopting or the person adopted resides.  A foster parent may adopt an adult who was placed in the foster parent's care when the adult was a juvenile if the foster parent has maintained a continuous familial relationship with that person for five or more years.

¶8        Despite the divorce between Coats and Mother, Coats asserts that he should be allowed to adopt Strickland under the stepchild provision because he still has a familial relationship with Strickland and denying the existence of a qualifying stepparent–stepchild relationship here would result in an unintended and unwarranted penalty upon the two.  "We review this issue *de novo* because it involves statutory construction and thus presents a question of law."  *Zamora v. Reinstein*, 185 Ariz. 272, 275 (1996).

¶9        We first turn to the language of the statute because it is "the best and most reliable index of a statute's meaning."  *State v. Williams*, 175 Ariz. 98, 100 (1993) (citation omitted).  "Our task in interpreting the meaning of a statute is to fulfill the intent of the legislature that wrote it." *Id.*  "If the statute is subject to only one reasonable interpretation, we apply it without further analysis."  *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015).

¶10        Section 14-8101(A) provides, in part, that "[a]ny adult person may adopt either another adult person who is at least eighteen years of age and not more than twenty-one years of age . . . or another adult person who is a stepchild . . . of the adopting person . . . ."  The statute does not define the term "stepchild."  Coats cites *Sjogren v. Metropolitan Property & Casualty Insurance Co.*, 703 A.2d 608 (R.I. 1997), among other cases from other states, for the proposition that the stepparent–stepchild relationship can survive the dissolution of the marriage between the natural parent and stepparent.

¶11        In *Sjogren*, an uninsured motorist benefits case, the Rhode Island Supreme Court decided that a stepchild remained a "relative" of a

wife who had divorced that stepchild's natural father and remarried another. 703 A.2d at 612. Even though the wife remarried, the stepchild continued to reside and maintain a stepparent–stepchild relationship with her. *Id.* at 609. The court reasoned that it was unclear whether the stepparent relationship legally survived dissolution. *Id.* at 612. But in keeping with the principle that insurance policy ambiguities should be construed in favor of the insured, the court held that on the facts of that particular case, the relationship survived. *Id.* By contrast, Arizona has answered a similar question in exactly the opposite way. *See Groves v. State Farm Life & Cas. Co.*, 171 Ariz. 191, 192-93 (App. 1992). The issue in *Groves* was whether a former son-in-law is a "relative" within the meaning of a homeowner's policy. *Id.* at 192. The court held that "[i]n insurance cases, one not a relative by blood or marriage is not covered as a relative." *Id.* In fact, the court made Arizona's interpretation clear when it stated, "We reject the two cases [Plaintiff] cites for the proposition that affinity is not terminated by divorce or death when there are surviving children of the marriage." *Id.* at 193 (internal quotations omitted).

¶12        Coats also relies on *In re Bordeaux' Estate*, 225 P.2d 433 (Wash. 1950). In that case, the Washington Supreme Court applied Louisiana law in an inheritance tax case and held that the stepparent–stepchild relationship persists after a divorce. *Id.* at 451. In *Bordeaux' Estate*, the decedent Sarah Esther Bordeaux married and became the stepmother to two children, ages ten and five. *Id.* at 434. Bordeaux raised them as her sons, and for the rest of her life they recognized her as their mother. *Id.* Bordeaux survived and inherited from her husband, the children's father. *Id.* She then willed the bulk of her property to her adult "stepsons." *Id.* If not legally recognized as Bordeaux' stepsons, the two men would be subject to a higher inheritance tax rate. *Id.* In a lengthy and thoughtful decision, the court analyzed the applicability of the well-recognized rule that the tie of affinity is broken upon death. *See generally* 225 P.2d 433. In concluding that the legislative intent of the Louisiana inheritance tax law at issue was to make no distinction between the child of a living parent and the surviving child of a deceased parent, the court held that "the principle that the death of a spouse, without issue, terminates the relationship by affinity, should not be applied to limit the meaning of the word 'stepchild,' as used in [the Louisiana inheritance tax statute under consideration]." *Id.* at 451.

¶13        The reasoning in *Bordeaux' Estate* does not apply to A.R.S. § 14-8101(A), because Arizona's adult adoption statute, by its express language, confers on existing stepfamilies a special benefit not otherwise available to others. This legislative intent is illustrated in *Pima County Juvenile Adoption Action No. B-13795*, 176 Ariz. 210 (App. 1993), in which we

construed A.R.S. § 8-117(B) as creating a stepparent exception to the child adoption statute *because of the existence of a permanent relationship* between the parent and stepparent of the child. There, regardless of the mother's desire that her ex-husband adopt her son, we said, "we can ascertain no intent to permit parties 'to legalize the *de facto* divorced family relationship.'" *Id.* at 211. Thus, Coats' reliance on *Sjogren* and other similar cases from other states is inconsistent with Arizona law.

¶14 Coats also asserts that if we interpret the statute to mean that the parties' stepparent–stepchild relationship ended when Coats and Mother divorced, this would unnecessarily penalize him and Strickland; that society at large will not be harmed by the legal recognition of an ongoing relationship; and that because the statute allows for a former foster parent to adopt an adult after the foster parent-child relationship has ended, we should interpret the statute to mean the same for stepparents. No doubt, these are persuasive arguments; however, A.R.S. § 14-8101(A) is unambiguous. As such, we must apply the statute as written. Therefore, we decline the invitation to expand the statutorily mandated adult adoption qualifying criteria from that of an "adult person who *is* a stepchild" to also include an "adult person who *was* a stepchild."

## CONCLUSION

¶15 We affirm the superior court's denial of Coats' petition to adopt Strickland.



AMY M. WOOD • Clerk of the Court
FILED: AA