Robert LAMOUREUX

v.

Eleanor V. DAVIS, et al.

No. 83–345–Appeal.

Supreme Court of Rhode Island.

Jan. 23, 1986.

Bernard Patrick Healy, Healy & Jones, Providence, for plaintiff.

Thomas C. Plunkett, Kiernan Currier & Plunkett, Providence, for defendants.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal from the denial of the defendants' motion for a new trial. After a jury trial in the Superior Court, the plaintiff was awarded damages for personal injuries suffered when he was attacked by a dog owned by the defendants. We affirm.

The evidence at trial established that on August 5, 1979, plaintiff, Robert Lamoureux, and his wife were driving in Smithfield, Rhode Island. They were not familiar with the area and were looking for a swimming hole at which Robert's cousin had said they could meet her. As they drove through Smithfield, they came to be on Tarklin Road, which is a public highway. They reached an area where they could see

two ponds of water about 1,000 feet to their right, in which people were swimming. A dirt road led to the ponds from Tarklin Road.

There were no gates or barriers across the dirt road. Posts on either side of the road were visible, but there were no signs on the posts and no warning of any kind at or near the entrance to the dirt road to indicate that a traveler would be passing from a public highway onto private property. As they turned onto the dirt road, the Lamoureuxes were, in fact, passing onto property owned by defendants, Eleanor and William Davis.

The Davises, at the time owned a large tract of land at this site, containing more than thirty acres. Neither the defendants' house, nor any other buildings were visible from the entrance to their property where the Lamoureuxes entered.

Conflicting evidence was offered in regard to whether signs and other warnings had been posted by defendants. Lamoureux testified that about two weeks after the incident in question he returned to the area for the specific purpose of discovering if any signs were posted. At that time he did find some signs approximately eight to ten inches long, but they were obstructed by tree branches and other growth and not easily visible from Tarklin Road.

In any event, Lamoureux and his wife had traveled approximately 1,000 feet along the dirt road toward the ponds when he stopped his car. Before he could get out or even open the car door, defendants' Great Dane leaped at him through the open window, bit his left arm, and held on.

Shortly thereafter a young boy arrived, and, at his command the dog released Lamoureux's arm. The arm was bleeding from lacerations caused by the dog's teeth.

At that point, Mrs. Davis came upon the scene and offered the observation that she had seen worse dog bites. She directed Lamoureux to a fire station where rescue services were available. Lamoureux drove there with his arm wrapped in a towel and received first aid. From there he went to Fogarty Memorial Hospital in North Smithfield where his wounds were sutured and other necessary attention was given.

Mrs. Davis testified that no-trespassing signs were visible on the day of the incident, and also that some fencing existed along portions of the property, although the fence was not completed. There was evidence from another witness that the distance from the road to the existing sections of fence varied, with some sections as far as seventy feet from the roadway.

The defendants' motions for a directed verdict, made both at the close of the plaintiff's case and renewed at the close of all evidence, were denied. The defendants' motion for a new trial was also denied.

The fundamental question in this case is what constitutes an enclosure within the meaning of G.L. 1956 (1976 Reenactment) § 4–13–16, the so-called dog-bite statute.[1] Many years ago, in 1916, this court interpreted the language in § 4–13–16 literally. The court held that an enclosure meant land enclosed by a fence, ditch, hedge, or other visible or tangible obstructions. *Whittet v. Bertsch*, 39 R.I. 31, 97 A. 18

1. General Laws 1956 (1976 Reenactment) § 4–13–16 provides:

"Action for damages—Double damages on second recovery—Destruction of offending dog. If any dog shall * * * assault, bite or otherwise injure any person while traveling the highway or out of the enclosure of the owner or keeper of such dog, the owner or keeper of such dog shall be liable to the person aggrieved as aforesaid, for all damage sustained, to be recovered in a civil action, with costs of suit; and if afterwards any such damage be done by such dog as aforesaid, the owner or

keeper of such dog shall pay to the party aggrieved double the damage, to be recovered in manner as aforesaid; and an order shall be made by the court, before whom such second recovery shall be had, for killing such dog, which order shall be executed by the officer who shall be charged with the execution thereof; and it shall not be necessary, in order to sustain any such action, to prove that the owner or keeper of such dog knew that such dog was accustomed to do such damage."

(1916). In that case the court referred to an earlier case, *Peck v. Williams*, 24 R.I. 583, 586, 54 A. 381, 382 (1903), which held that "[t]he word 'enclosure,' in its ordinary legal signification, imports land enclosed with something more than the imaginary boundary line * * *." Later, this literal interpretation was relaxed considerably in *Wilbur v. Gross*, 55 R.I. 473, 182 A. 597 (1936). The court held that even though the General Assembly did adopt an absolute-liability standard in § 4–13–16, it did not intend to require dog owners to surround their property completely with a visible obstruction such as a wall or a fence in order to avoid being absolutely liable. In *Wilbur* the court reasoned that the purpose of an enclosure in this statute is to afford an *entrant* "reasonable notice that he is entering upon occupied premises, where there may be a dog." *Id.* at 447, 182 A. at 599. The court held that property was adequately enclosed "if such premises are set apart from adjoining property by boundaries sufficiently apparent to indicate the approximate limits of occupation." *Id.*

■ Our most recent pronouncement on this issue came in 1978 when, in *Bernhart v. Nine*, 120 R.I. 692, 391 A.2d 75 (1978), the court reaffirmed the *Wilbur* interpretation of "enclosure." In *Bernhart* this court upheld the trial justice's refusal to instruct the jury that "enclosure," as used in § 4–13–16, meant land enclosed by some visible or tangible obstruction. The court specifically approved the *Wilbur* holding that the "enclosure" was intended to give reasonable notice to outsiders that they were moving onto private property rather than for the purpose of keeping animals confined on the owners land. In view of the holding in *Bernhart*, defendants' assertion in this case that it was plaintiff's burden to prove that the attack occurred outside the dog owners' "enclosure" is not consistent with our settled law on the issue.

The basic question in this case, a question of fact, is whether a sufficient enclosure existed to give notice to a reasonable person that he or she was entering onto private land.

■ In acting on a defendant's motion for directed verdict, the trial justice must examine the evidence in the light most favorable to the plaintiff, without evaluating it for credibility, and draw all reasonable inferences in that plaintiff's favor. If, after doing so, there is evidence that would support a verdict in favor of the plaintiff or if there is evidence upon which reasonable minds could differ, the trial justice should deny the motion for directed verdict. *Pankiw v. Polish National Catholic Church of Our Savior*, — R.I. —, 493 A.2d 819 (1985).

■ In this case plaintiff testified that he saw neither signs nor fence and that there was no gate or barrier across the road. There was also evidence that fencing on the property was not complete. Moreover, there was evidence that the fence was not fully visible from the point where plaintiff entered onto the land, nor was there any attempt, apparently, to warn the general public that a dog would be running loose on the land. The trial justice was correct in concluding that evidence was present in the record on which reasonable minds could differ. The motions for a directed verdict were properly denied.

■ When ruling on a motion for new trial, the trial justice takes the position of a juror. The justice examines the evidence in the record in the light of his charge to the jury and, exercising his independent judgment evaluates it for credibility, rejecting evidence he finds incredible and drawing all reasonable inferences from the evidence that he finds credible. *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964). If the trial justice properly performs his duties, this court will not disturb his decision unless the moving party is able to show that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Pray v. Narragansett Improvement Co.*, — R.I. —, 434 A.2d 923 (1981).

In this case we have no reason to believe that the trial justice overlooked or misconceived any material evidence, and there appears to be sufficient evidence to warrant the verdict in favor of the plaintiff. Therefore, the motion for new trial was correctly denied.

For these reasons the defendants' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.