**Barry E. DuBOIS et al.**

v.

**Frederick QUILITZSCH et al.**

**No. 2009–372–Appeal.**

Supreme Court of Rhode Island.

June 24, 2011.

Nicholas Gorham, Esq., North Scituate, for Plaintiff.

Stanley F. Pupecki, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiff, Barry E. DuBois, was seriously injured when he was bitten by a dog, inauspiciously named Bear, while he was attempting to inspect a pigeon loft on the defendants' property. He and his wife, Susan L. DuBois, also a plaintiff, now appeal from the entry of summary judgment in favor of the defendants, Frederick Quilitzsch, Sr. and Frederick Quilitzsch, Jr. This case came before the Supreme Court, sitting at Classical High School, for oral

argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

### Facts and Procedural History

In September 2007, Mr. Quilitzsch, Jr. lived in a house in Pawtucket, Rhode Island (the property), which he owned with his father, Mr. Quilitzsch, Sr. Although Mr. Quilitzsch, Sr. no longer lived at the property, he maintained a pigeon loft, or coop, on the premises. Mr. Quilitzsch, Jr. owned an Australian Shepherd (the dog or Bear), which he had obtained when it was a puppy. As of September 2007, Bear was three years old, thirty-five inches in height, and weighed forty-seven pounds.

Mr. Quilitzsch, Jr. testified at his deposition that he often kept Bear outside next to the pigeon loft, tethered to a piece of lumber "that goes in the ground that the caging was on." The tether was a plastic-coated steel cable twenty to twenty-five feet long. Mr. Quilitzsch, Jr. stated that the grass was worn and missing throughout the area where the tether extended farthest because the dog frequently walked over that area. There also was a grapevine on a "trellis[-]type structure" adjacent to the loft and an "alley" between this grapevine and the loft, providing a shady area for Bear within the reach of the tether. Mr. Quilitzsch, Jr. testified that Bear had been tethered in this location "[a]lmost daily" since he was a puppy.

In September 2007, Mr. Quilitzsch, Sr. applied to renew his license to maintain the pigeon loft. In response to this application, Mr. DuBois, an environmental officer for the City of Pawtucket, went to the property shortly after noon on September 7, 2007, to inspect the pigeon loft. Mr. Quilitzsch, Jr. was not home at the time; he had left Bear tethered in the aforementioned location. Mr. DuBois parked in the driveway and then went to the door of the home and knocked, but there was no answer. Mr. DuBois proceeded to walk up the driveway and over to the pigeon loft. At his deposition, Mr. DuBois explained, "[e]verything looked okay, but [he did not] see any birds * * * [so he] bent down [to look in the loft] to see if there [were] any birds[,] [a]nd the dog was underneath the grapevines and just jumped on [him], knocked [him] over, went right for [his] face." Mr. DuBois testified that, as he tried to get away, the dog bit his left hand "right down to the bone" and then bit through his right calf.

Mr. Quilitzsch, Sr. arrived at the scene shortly thereafter. Mr. DuBois testified that, upon arriving, Mr. Quilitzsch, Sr. said that he did not anticipate that an inspector would be there so soon, and he explained that "[t]he dog[ ] [is] not usually tied there[;] [t]he reason the dog[ ] [is] tied there is because [Mr. Quilitzsch, Jr.] had a refrigerator being delivered today." Mr. Quilitzsch, Jr. explained that on the day of the incident he was expecting a delivery of a "machine that picks up leaves" from Sears around 1 p.m., but he further stated that the dog was outside because it was a nice day and not because of this expected delivery.

It is undisputed that neither Mr. Quilitzsch, Sr. nor Mr. Quilitzsch, Jr. knew that someone would be coming to inspect the pigeon loft on the day of the incident; no prior notice had been sent to them, and Mr. DuBois had not called before going to the property.

Additionally, neither Mr. Quilitzsch, Sr., Mr. Quilitzsch, Jr., nor Mr. DuBois testified that they were aware of any prior incidents in which Bear had attacked someone. Mr. Quilitzsch, Jr. said that the dog had "never bit[ten] anybody before" and that he had never been told that the dog was too rough. According to Mr. Quilitzsch, Jr., the pet store that sold the dog to him did not indicate that the dog's mother or father had any violent propensities. Mr. Quilitzsch, Jr. said that Bear had been tethered in the same location during barbecues and that guests would approach and pet Bear without any problems. Mr. Quilitzsch, Jr. stated that, even if he had known that the inspector was coming, he nonetheless would have left Bear tethered in the same location and would have been comfortable letting the inspector go to the loft by himself. He did testify, however, that Bear was tethered in a location where his father could walk to feed the birds without coming into contact with the dog, because "the dog seeing [his] father would be all excited and [he] wouldn't want [Bear] to knock over [his] father with the cane." [1]

In April 2008, Mr. DuBois and his wife filed a civil action alleging strict liability, premises liability, and negligence.[2] The defendants answered the complaint and the parties conducted discovery. Thereafter, in July 2009, defendants moved for summary judgment, arguing that because the "alleged attack occurred within the enclosure of the home and the defendants had no knowledge of the dog's vicious propensity, [they were] entitled to summary judgment as a matter of law."

A hearing on the motion for summary judgment was held on September 15, 2009.

The defendants argued that plaintiffs did not have a viable strict-liability claim because the attack occurred within the enclosure of the property, noting that "the pigeon coop in question was clearly within the defendant's yard" and that "[t]here can be no doubt here that this area [was] private." The defendants further noted that there was a fence surrounding most of the yard and that Mr. DuBois had to drive past the fence to enter the driveway. In regard to the negligence claim, defendants argued that, to prevail under the common law, plaintiffs had to "prove that the defendant had some knowledge of the dog's vicious propensity prior to the incident," and that plaintiffs had failed to do so here, thus warranting summary judgment.

In response, plaintiffs argued that the unconnected fence neither created a sufficient enclosure nor served as proper notice to indicate that the area was private. The plaintiffs further argued that, even assuming a proper enclosure existed, there was an issue concerning whether "the enclosure defense appl[ies] when the [property/dog owner] has invited the person to come to that particular area." Finally, plaintiffs argued that defendants did have knowledge of the dog's propensity to bite, evidenced by the allegedly purposeful moving of the dog in anticipation of the arrival of the Sears delivery man.

After hearing the parties' arguments, the trial justice acknowledged that, although "[s]ummary judgment is a drastic remedy, * * * it can be granted when there are no genuine issues of material fact." The trial justice then addressed the strict-liability claim and found that, with respect to the enclosure issue, the fence in this case gave "more than reasonable no-

---

1. Mr. Quilitzsch, Jr. had Bear euthanized shortly after this incident.

2. The complaint also alleged that Mrs. DuBois suffered damages for loss of consortium and a loss of homemaker services as a result of the injuries suffered by her husband.

tice to third-parties that the area [was] private, whether the third-party [was] an invitee or not." The trial justice accordingly granted summary judgment in favor of defendants on the strict-liability count.

The trial justice then proceeded to address the negligence and premises-liability claims. She acknowledged that such claims "require[ ] a showing that there was evidence, that there was knowledge[,] [that] defendant knew or should have known of the propensity of the animal to demonstrate vicious behavior," and she found that "there has been no evidence of that." In response to plaintiffs' contention that knowledge of the dog's vicious propensity was revealed by defendant moving the dog prior to the delivery man arriving, the trial justice noted that "[t]hat does not create a genuine issue of fact that there was knowledge of a propensity of a vicious act by the dog. [Rather,] [p]eople may just not like dogs * * * and may not want to be around dogs." The trial justice concluded that plaintiffs' argument was merely "unsupported speculation" and that plaintiffs had not come forward "with any competent evidence to show the [c]ourt that there [was] a disputed fact regarding the dog's propensity to do anything." Thus, the trial justice also granted summary judgment on the negligence and premises-liability counts.[3]

Final judgment in favor of defendants was entered on September 23, 2009, from which plaintiffs timely appealed.

## II

### Standard of Review

"This Court reviews the grant of summary judgment on a de *novo* basis, applying the same standards as the trial court."

*Montiero v. Silver Lake I, LP.*, 813 A.2d 978, 980 (R.I.2003) (quoting *Sobanski v. Donahue*, 792 A.2d 57, 59 (R.I.2002)). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I.2001)). "The parties opposing summary judgment may not 'rely upon mere allegations or denials in their pleadings[;] [r]ather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact.' " *Id.* (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

## III

### Discussion

"Under the common law a person could recover damages from a dog bite only if that person could prove that the owner was aware of the dog's dangerous propensities * * *." *Ferrara v. Marra*, 823 A.2d 1134, 1137 (R.I.2003). In 1889 (P.L. 1889, ch. 749, § 1), however, the Legislature enacted a statute, now embodied in G.L.1956 § 4–13–16, that imposes strict liability in circumstances in which "any dog kills, wounds, worries, * * * assaults, bites, or otherwise injures any person while traveling the highway or *out of the enclosure of the owner or keeper of that dog* * * *." (Emphasis added.) *See Johnston v. Poulin*, 844 A.2d 707, 713 (R.I. 2004); *Ferrara*, 823 A.2d at 1137; *Montiero*, 813 A.2d at 981; *Kelly v. Alderson*, 19 R.I. 544, 544–45, 37 A. 12, 12 (1896). This

---

**3.** The trial justice also granted summary judgment on the counts alleging loss of consortium and loss of homemaker services, noting that they were "based on the existence of liability for the other counts."

Court has interpreted the term "enclosure" to mean "a fence, physical obstruction or any other condition that gives reasonable notice to third parties that the area is private." *Montiero*, 813 A.2d at 981; *see also Butti v. Rossi*, 617 A.2d 881, 882 (R.I.1992). If injuries are suffered within an owner's enclosed area, the strict-liability statute does not apply, but rather the common law continues to apply and dictates that the plaintiff first must prove that the defendant knew about the dog's vicious propensities, a scienter requirement commonly referred to as the "one-bite rule." *See Montiero*, 813 A.2d at 981.

On appeal, plaintiffs do not dispute that this incident occurred within a proper enclosure and thus do not contest the grant of summary judgment on the strict-liability count. Rather, plaintiffs argue that the trial justice erred in finding that there was no genuine issue of material fact concerning whether defendants had knowledge of the dog's violent propensities, and thus they contend that the trial justice erred in granting summary judgment on the premises-liability and negligence counts. More specifically, plaintiffs aver that defendants' alleged effort to isolate the dog from the presence of a stranger, namely, the Sears delivery man, creates a material issue of fact concerning their knowledge of the dog's propensity to attack strangers. The plaintiffs contend that Mr. Quilitzsch, Sr.'s statement after the incident, that "[t]he dog[ ] [is] not usually tied there[,] [t]he reason the dog[ ] [is] tied there is because [Mr. Quilitzsch, Jr.] had a refrigerator being delivered today," although "inferential," "was evidence nonetheless and the [trial justice] should have allowed the trier of fact to resolve it."

During the hearing on the motion for summary judgment, the trial justice addressed plaintiffs' contention that the aforementioned statement created an issue of fact concerning defendants' knowledge, and she explained that the statement "does not create a genuine issue of fact that there was knowledge of a propensity of a vicious act by the dog[,] [rather,] [p]eople may just not like dogs * * * and may not want to be around dogs." The trial justice proceeded to find that there was no evidence indicating that defendants knew of a propensity of Bear to engage in vicious behavior.

Upon conducting our own *de novo* review of the record, we agree with the trial justice's conclusions. The plaintiffs have failed to produce competent evidence creating a genuine issue of material fact as to defendants' knowledge of the dog's vicious propensities. Mr. Quilitzsch, Jr. testified that Bear had never attacked anyone before this incident, and he recalled past occasions when the dog, in fact, allowed guests to approach it and pet it, without harm, while it was tethered. Mr. Quilitzsch, Sr. and Mr. DuBois similarly did not know of any past incidents in which this dog had attacked someone.

Although Mr. DuBois testified that Mr. Quilitzsch, Sr. told him that the dog was tethered in the vicinity of the pigeon loft because a Sears delivery man was expected to come to the property, there was no evidence that Bear was tethered there because of any violent tendencies. To the contrary, Mr. Quilitzsch, Jr. provided a sworn statement explaining that the dog was tethered outside on the day of the incident because it was a nice day and not because of this expected delivery. This Court has recognized that upon a motion for summary judgment if the moving party presents evidence demonstrating that there is no genuine issue of material fact, the party opposing summary judgment has an affirmative duty to respond with specific facts that would constitute a genuine issue for trial. *Volino v. General Dynam-*

*ics,* 539 A.2d 531, 532–33 (R.I.1988). Thus, to overcome the motion for summary judgment in the instant case, plaintiffs had to provide specific facts or evidence tending to demonstrate that defendants had knowledge of Bear's vicious propensities. The equivocal statement made by Mr. Quilitzsch, Sr. does not suffice as evidence demonstrating that defendants had knowledge of the dog's violent tendencies. Therefore, plaintiffs failed to meet their burden.

█ The plaintiffs further argue on appeal that, notwithstanding the one-bite rule, they should be allowed to proceed with common-law negligence and premises-liability claims. More specifically, plaintiffs contend that this Court should "allow on-premises dog attacks—with or without proof of scienter—to be judged in the same fashion as all other premises liability claims," and allow common-law negligence claims as "an *alternative* cause of action * * * to the one-bite/scienter standard." Additionally, plaintiffs argue that the one-bite rule is on the decline in the United States and should be modified in accord with other jurisdictions, in which the owner of a dog may be held liable for injuries caused by the dog even if the dog is not vicious if the plaintiff can prove that the owner's negligent handling or keeping of the dog caused the injury.

Our state law concerning liability for a dog bite is well settled, with cases dating back over a century, providing that, so long as the dog was within a proper enclosure of the owner, as the dog was here, the defendant is entitled to protection under the "one-bite rule." *E.g., Ferrara,* 823 A.2d at 1137; *Montiero,* 813 A.2d at 981–82; *Oldham v. Hussey,* 27 R.I. 366, 368, 62 A. 377, 378 (1905). Had the General Assembly wished to expand liability for incidents occurring within enclosed areas, it could have done so when enacting the strict-liability statute pertaining to incidents outside of enclosures, or at any later time, but it has not. As recently as 2003, in *Montiero,* 813 A.2d at 982, this Court declined to create a species-specific standard of care pertaining to dog bites, noting that the issue "is a policy matter that is better left to the [L]egislature." We continue to be of the opinion that any modification to our dog-bite law is best left to the General Assembly.

█ Finally, the plaintiffs argue that, if a person is invited into an enclosed area by the property owner, the one-bite rule should not preclude actions for negligence or premises liability. The plaintiffs assert that Rhode Island case law "clearly establishes a duty on landowners to prevent *foreseeable* injury for any person invited to their property." We note that the plaintiffs submitted no evidence demonstrating that the defendants knew the inspector was coming to the premises on the day of the incident or that the defendants should have known the dog had a propensity to attack an approaching stranger. More importantly, however, we are of the opinion that the common-law one-bite rule applies notwithstanding the injured person's status as an invitee. We therefore decline to expand liability in dog-bite cases that involve invitees and rather leave any such modification to the General Assembly.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

ROBINSON, J., dissenting.

Although I readily acknowledge that this is a close case, in the end I have concluded that I must respectfully dissent. In my

opinion, the plaintiffs have succeeded in pointing to enough of a material factual dispute with respect to the premises liability and negligence counts so as to make disposition pursuant to Rule 56 of the Superior Court Rules of Civil Procedure inappropriate. I am convinced that a factfinder could infer that the owner of the dog in question, an animal that was almost three feet tall at the time of the incident in question, was "aware of the dog's dangerous propensities." *See Ferrara v. Marra,* 823 A.2d 1134, 1137 (R.I.2003).[1]

I have read the Court's well written opinion over and over again, but each time I become more convinced that this case cries out for resolution by a finder of fact. Summary judgment is, metaphorically speaking, a "terrible swift sword;" and I do not believe that that sword should have been wielded to bring so swift an end to the litigation of this case.

This Court has indicated repeatedly that "[s]ummary judgment is an extreme remedy that must be cautiously applied." *Canavan v. Lovett, Schefrin and Harnett,* 862 A.2d 778, 783 (R.I.2004); *see also Sharkey v. Prescott,* 19 A.3d 62, 66 (R.I. 2011); *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.,* 994 A.2d 54, 57 (R.I.2010); *Johnston v. Poulin,* 844 A.2d 707, 710 (R.I. 2004); *Sjogren v. Metropolitan Property and Casualty Insurance Co.,* 703 A.2d 608, 610 (R.I.1997). As a corollary to that principle, we have emphasized that, in the summary judgment context, courts are required to "draw *all reasonable inferences* in the light most favorable to the nonmoving party." *Hill v. National Grid,* 11 A.3d 110, 113 (R.I.2011) (emphasis added) (internal quotation marks omitted).

Turning to the factual narrative contained in the majority opinion, I note that Mr. DuBois (an environmental officer employed by the City of Pawtucket, who was on the premises in question pursuant to a request by one of the defendants that he conduct an inspection of the pigeon coop located on the property) testified at a deposition about what transpired shortly after he was attacked by the dog. The Court's opinion summarizes as follows the testimony of Mr. DuBois:

> "Mr. Quilitzsch, Sr. arrived at the scene shortly thereafter. Mr. DuBois testified that, upon arriving, Mr. Quilitzsch, Sr. said that he did not anticipate that an inspector would be there so soon, and he explained that '[t]he dog[ ] [is] not usually tied there[;] [t]he reason the dog[ ] [is] tied there is because [Mr. Quilitzsch, Jr.] had a refrigerator being delivered today.'"[2]

By contrast, the deposition testimony of Mr. Quilitzsch, Jr. gave a different reason for the dog being tethered outside. The Court has summarized that testimony as follows:

---

1. This Court's previous opinions are not entirely consistent as to precisely what propensity the owner of a dog must be aware of before he or she can be exposed to possible liability. For example, in *Ferrara v. Marra,* 823 A.2d 1134, 1137 (R.I.2003), this Court spoke of an awareness of "the dog's *dangerous* propensities." (Emphasis added.) On the other hand, an earlier opinion in the same term speaks of knowledge of "the dog's *vicious* propensities." *Montiero v. Silver Lake I, LP.,* 813 A.2d 978, 981 (R.I.2003) (emphasis added).

2. I am aware that the deposition testimony of Mr. Quilitzsch, Sr. as to why the dog was outside is inconsistent with what Mr. DuBois testified had been the statement of Mr. Quilitzsch, Sr. upon arriving at the scene shortly after the dog had bitten Mr. DuBois. In my opinion, when a case involves such inconsistencies, a finder of fact should make the requisite determinations as to credibility. *See, e.g., Arnstein v. Porter,* 154 F.2d 464, 469 (2d Cir.1946) ("[A]s credibility is unavoidably involved, a genuine issue of material fact presents itself").

"Mr. Quilitzsch, Jr. provided a sworn statement explaining that the dog was tethered outside on the day of the incident because it was a nice day and not because of this expected delivery."[3]

The statement attributed to the father by Mr. DuBois and the statement sworn to by the son as to *why* the dog in question was tethered outside on September 7, 2007 simply cannot be reconciled with each other.

It is undisputed that plaintiff was invited to the premises for the purpose of inspecting a pigeon coop. It is further undisputed that the dog was tethered outdoors in a location that allowed the animal to attack plaintiff. What remained in dispute as the Superior Court considered the motion for summary judgment was *why* the dog had been tethered and *what* a finder of fact could infer from same.

In my opinion, a fact-finder would be entitled to accord credibility to the statement of Mr. Quilitzsch, Sr. (as recalled by Mr. DuBois) to the effect that the dog was tethered *because* the son "had a refrigerator being delivered" on that day. It is further my opinion that the fact-finder could then infer that the dog's owner (the son) was knowledgeable of the dog's dangerousness or viciousness.

I certainly do not know who would prevail if this case were to go to trial. But that is not the point. *See Mitchell v. Mitchell* 756 A.2d 179, 185 (R.I.2000) (stating that the purpose of summary judgment "is not to cull out the weak cases from the herd of lawsuits waiting to be tried" and further stating that "only if the case is legally dead on arrival should the court take the drastic step of * * * granting summary judgment"); *see also Estate of*

*Giuliano v. Giuliano,* 949 A.2d 386, 394 n. 9 (R.I.2008) ("The *weight* of the evidence should not be evaluated at the summary judgment stage.") (emphasis in original); *Rodrigues v. DePasquale Building and Realty Co.,* 926 A.2d 616, 622 (R.I.2007). In deciding whether or not summary judgment should be granted, it must at all times be borne in mind that "[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I. 1996); *see also Estate of Giuliano,* 949 A.2d at 391; *Steinberg v. State,* 427 A.2d 338, 340 (R.I.1981).

Finally, it should be remembered that, in the summary judgment context, courts are required to "draw all reasonable inferences in the light most favorable to the nonmoving party." *Hill,* 11 A.3d at 113 (internal quotation marks omitted); *see also DeLaire v. Kaskel,* 842 A.2d 1052, 1054 (R.I.2004). In my opinion, this is *not* a case "where the facts suggest only one reasonable inference"—and, for that reason, I do not believe that the defendants' motion for summary judgment should have been granted. *See Kennedy v. Providence Hockey Club, Inc.,* 119 R.I. 70, 77, 376 A.2d 329, 333 (1977).

For these reasons, I respectfully dissent.

---

3. Mr. Quilitzsch, Jr. admitted at his deposition that he had been expecting a delivery from Sears on the day in question, but he said that it was "a leaf picker upper" that was to be delivered. For present purposes, however, it is immaterial whether the expected item was a refrigerator or "a leaf picker upper."