**Supreme Court**

No. 2012-72-Appeal.
(PC 08-2398)

Jaime Carreiro                    :

v.                     :

David Tobin, Alias et al.        :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jaime Carreiro            :

v.            :

David Tobin, Alias et al.            :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, Jaime Carreiro (plaintiff), appeals from the Superior Court's grant of summary judgment in favor of the defendant, David Tobin (defendant).[1]  Specifically, the plaintiff asserts that the trial justice erred in finding that the dog bite at issue occurred within the enclosure of the owner or keeper of the dog.  Further, the plaintiff avers that the apartment in which the incident took place is an entirely separate apartment within the defendant's building and that, therefore, the presence of the dog outside the defendant's enclosure is sufficient to impose strict liability on the defendant for injuries resulting from the bite.  On April 4, 2013, this case came before the Supreme Court, sitting at Exeter-West Greenwich High School in the Town of West Greenwich.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

---

[1] Another defendant, Caitlin Regan, was dismissed from the case by stipulation of the parties on January 23, 2013.

# I

## Facts and Procedural History

On the afternoon of December 16, 2007, plaintiff visited his friends Kevin and Kyle Regan[2] to watch a football game, together with friends Matthew Martel and "Stephen,"[3] as the men had done on several previous Sundays. The Regan brothers lived in the second-floor apartment of a two-family house at 4 Colonial Drive in the Town of North Providence. The house is owned by defendant, who lives in the first-floor apartment. Kyle and Kevin's mother, Wendy Regan, lives with defendant in the first-floor apartment. Neither defendant nor Wendy was home at the time of the incident.

The plaintiff stated at deposition that he had visited the home before, and had previously met Kyle and Kevin's sister, Caitlin Regan,[4] and her sixty-five-pound pit bull, Angus. Mr. Carreiro recalled meeting Angus "[o]nce or twice briefly," and he thought that one such occasion took place "at the Tobin residence." Mr. Carreiro stated that he knew Caitlin had owned the dog for a few years and he had never noticed any problem with Angus's behavior. On the afternoon of December 16, Caitlin was not in attendance, but Angus was in the unlocked first-floor apartment. Precisely when and how Angus arrived at the Tobin residence is a gnawing question.

Further, whether Caitlin lived in the first-floor apartment with her mother and defendant is a matter of dispute. The defendant and Wendy stated that Caitlin did not live with them. The defendant said that Caitlin had previously shared the upstairs apartment with her brother, Kevin, but that she lived in South County at the time of the incident. There is no testimony from Kyle

---

[2] Because there are several members of the Regan family referenced in this opinion, we will refer to them by their first names. No disrespect is intended.

[3] Stephen's last name is unknown.

[4] Ms. Regan is variously referred to in the record as Katy, Katie, Caitlin, and Kathryn. We will rely on Ms. Regan's signature within the record as authoritative and thus will refer to her as Caitlin.

or Kevin in the record. Martel stated that Caitlin lived in the first-floor apartment, but he did not provide the basis for his knowledge. The plaintiff stated that Caitlin was staying in the first-floor apartment "temporarily," but he also did not state his basis for this belief. In her answer to plaintiff's complaint, Caitlin indicated that she did not reside in the first-floor apartment at the time of the incident. There is no statement from Caitlin in the record, and no one witnessed her dropping off the dog. The police report regarding the incident identifies "Katie Regan" as the owner of the dog, and it lists her address as "4 Colonial Dr." but does not include an apartment number.

In any event, at some point in the afternoon, someone fetched Angus from defendant's apartment and brought the dog upstairs, where it visited for a time before being taken back downstairs. The plaintiff stated that "[i]t had to have been" either Kyle or Kevin who brought the dog into the second-floor apartment. This first visit was short and uneventful. Later that afternoon, Stephen retrieved the dog for a second visit, and Angus made his rounds "checking everyone out" before approaching plaintiff. Mr. Carreiro reported that the dog "seemed fine." He petted the dog as Angus sniffed him, but Carreiro further testified that, when he turned his head, the dog "just snapped at me. He took one bite and then ran." The plaintiff then went to St. Joseph's/Fatima Hospital, where he received stitches to close the wound he received from the dog bite.

On March 24, 2008, plaintiff filed suit in Superior Court against "Katie Regan" and defendant, alleging that Caitlin's dog "had hostile and vicious tendencies" and that, "as a direct and proximate result of [d]efendants' negligence, [p]laintiff was caused to sustain severe personal injuries."[5] In August 2011, defendants moved for summary judgment. At a hearing on

---

[5] The complaint was later amended to correct Caitlin's name.

October 18, 2011, the Superior Court granted summary judgment in favor of defendants. The plaintiff timely appealed. In January 2013, Caitlin Regan was dismissed from the suit, by agreement.

## II

### Standard of Review

This Court reviews the grant of summary judgment "de novo, 'employing the same standards and rules used by the hearing justice.'" Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 574 (R.I. 2012) (quoting Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011)). "[S]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Employers Mutual Casualty Co. v. Arbella Protection Insurance Co., 24 A.3d 544, 553 (R.I. 2011) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 390 (R.I. 2008)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Great American E & S Insurance Co., 45 A.3d at 574 (quoting Generation Realty, LLC, 21 A.3d at 258).

## III

### Discussion

Liability for acts of canine aggression is well settled in Rhode Island. For injuries suffered within a dog owner's "enclosure," we adhere to the common-law rule requiring "that the plaintiff first must prove that the defendant knew about the dog's vicious propensities, a scienter requirement commonly referred to as the 'one-bite rule.'" DuBois v. Quilitzsch, 21 A.3d 375, 380 (R.I. 2011). Since 1889, however, statutory law has imposed strict liability where the dog

bite occurs outside the owner or keeper's enclosure. See Bernhart v. Nine, 120 R.I. 692, 694-95, 391 A.2d 75, 76-77 (1978).  General Laws 1956 § 4-13-16 provides that, if a dog "assaults, bites, or otherwise injures any person while traveling the highway or out of the enclosure of the owner or keeper of that dog, the owner or keeper of the dog shall be liable to the person aggrieved, for all damage sustained * * * ."  Additionally, liability for damages done by any dog extends to "[a]ny person keeping or harboring [the dog] in his or her house or on his or her lands * * *."  Section 4-13-17.  Precisely where the dog bite took place, then, can be outcome-determinative.

On appeal, plaintiff argues that a genuine issue of material fact exists as to whether the second-floor apartment was a separate enclosure for purposes of § 4-13-16.  Because the bite occurred in a distinct private residence, rather than within the first-floor apartment, yard, or common areas of defendant's house, plaintiff asserts that the dog was outside the enclosure of the owner or keeper and that, therefore, there is a genuine issue of fact as to whether defendant is strictly liable.  The defendant responds that the purpose of an enclosure, under § 4-13-16, is to put a person on notice that he or she is entering a premises where there might be a dog present.  Because plaintiff was already aware that the dog was present within an enclosed space, defendant argues, it is immaterial whether the dog was within a separate apartment when the bite occurred and as such there would be no liability absent evidence of knowledge of the dog's prior vicious tendencies.[6]  The central question is, then, what is meant by the term "enclosure of the owner or keeper" as set forth in § 4-13-16.

Fortunately, while there is no case that is completely on all fours with this one, there is a dog-eared decision from 1936 that gives us clear guidance.  In Wilbur v. Gross, 55 R.I. 473, 477,

---

[6] The plaintiff conceded that "It's not a negligence issue.  The evidence is clear.  There's no real testimony that there's any knowledge of any of the owners that the dog had violent or dangerous or vicious propensity."

182 A. 597, 599 (1936), this Court conducted an extensive exploration of the meaning of enclosure under the statute and determined that "the important thing under [the statute] is that there be something to give a man reasonable notice that he is entering upon occupied premises, where there may be a dog." We held that no "restraining obstructions" were required because the "land need not be surrounded by barriers of a sort to keep dogs in, if they wish to go through them, and * * * the degree of care exercised by the owner to keep his dog inside his premises has no bearing on the question of his legal liability." Id. at 479, 182 A. at 600. Rather, "the nature of the owner's liability [is] dependent upon whether or not the injured man did or did not have reasonable notice that he was entering within the boundaries of occupied land, where a dog might be kept by the occupant." Id. at 480, 182 A. at 600.

In the decades since Wilbur, we have continued to apply that definition, unaltered, in claims arising under § 4-13-16. See, e.g., Montiero v. Silver Lake I, L.P., 813 A.2d 978, 979 & n.1, 981 (R.I. 2003) (holding that a landlord could not be held liable for injuries resulting from a dog bite on its premises when there was no evidence to suggest that the landlord knew of the dog's dangerous propensities); Lamoureux v. Davis, 504 A.2d 449, 451 (R.I. 1986) (holding that a poorly marked enclosure was not sufficient to put a person on notice that he or she was entering onto occupied premises where a dog might be present); Bernhart, 120 R.I. at 699, 391 A.2d at 78 (stating that "a visitor making his way onto the [defendant's] property should have noticed that he was about to enter premises on which he might be confronted with a curious, if not cantankerous dog").

We have held that the intent of the enclosure requirement "is not to keep the dog inside the occupied premises but to keep persons outside, unless they are willing to assume the risk of being injured, while on the occupied premises, by a dog which is there kept and which the

occupant reasonably believes to be gentle." <u>Wilbur</u>, 55 R.I. at 481, 182 A. at 601. Here, plaintiff was clearly on notice that he was on occupied premises on which there might be a dog. He had previously met Angus, and thought that he had seen the dog once before at the Tobin residence. He had encountered the dog earlier that afternoon, without incident. He could not, therefore, be surprised to meet Angus again on his later visit. The plaintiff conceded that there was no indication that defendant knew Angus to be vicious, and plaintiff himself had never noticed any problem with the dog.

The plaintiff urges us, however, to consider the second-floor apartment an entirely separate enclosure from defendant's first-floor apartment. To support this argument, plaintiff points out that Kyle and Kevin paid rent and that the second-floor apartment was accessed by a separate side entrance. Although plaintiff asserts that defendant had "no legal right [to be] inside the Regans' apartment unless specific permission [wa]s granted," there is no evidence in the record regarding whether the door to the second-floor apartment was locked or even kept closed, or whether defendant or the dog had permission to come and go at will. The defendant testified at deposition that both the first- and second-floor apartments were accessible from the same side entrance, that he regularly left the door to his first-floor apartment unlocked, and that the brothers were "always welcome to come in." Absent an inquiry into whether the second-floor apartment was kept locked and whether defendant was excluded from the premises, it is impossible to determine whether the second-floor apartment was a separate enclosure within defendant's house. This remains a disputed question of material fact that must be determined by a trier of fact.

Assuming, <u>arguendo</u>, that the second-floor apartment was a wholly separate enclosure, to hold defendant strictly liable, plaintiff must also prove that defendant was the "owner or keeper"

of the dog that bit him while outside defendant's enclosure. Section 4-13-16. There is no dispute that Caitlin was the owner of the dog, but there is no definition of the term "keeper" within our case law. Presumably, if the dog were in defendant's first-floor apartment with his permission, defendant would be the keeper. While there is no dispute that the dog, at some point, arrived in the first-floor apartment, it is unclear whether the dog was there with defendant's knowledge or permission, tacit or otherwise. As noted previously, § 4-13-17 imposes the same liability of an owner upon "[a]ny person keeping or harboring * * * [a] dog, or knowingly suffering this to be done by any other person * * *." Thus, plaintiff must also show that defendant knew of or permitted Angus's presence on his premises. See Montiero, 813 A.2d at 981 ("The first step in imposing liability under [§ 4-13-17] is to establish that the keeper or harborer knew of the dog's presence on the premises.").

Finally, strict liability may not rest solely on the fact that, for some portion of December 16, 2007, the dog stayed in the defendant's first-floor apartment. There is no evidence in the record that the defendant exercised any control over the dog. Given that the defendant was absent from the premises when the dog was taken out of the first-floor apartment and brought into Kyle and Kevin's second-floor apartment, it seems likely that Kyle and Kevin exerted control over the dog at the time of the incident and, as such, they rather than the defendant were Angus's keepers. We conclude that these disputed issues must be resolved by a trier of fact and are not suitable for summary disposition.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court. The record of this case shall be remanded to the Superior Court for further proceedings consistent with this opinion.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          Jaime Carreiro v. David Tobin, Alias et al.

**CASE NO:**          No. 2012-72-Appeal.
(PC 08-2398)

**COURT:**          Supreme Court

**DATE OPINION FILED:**  May 28, 2013

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Adam Resmini, Esq.

For Defendant:  Kathryn J. Hopkins, Esq.