**Supreme Court**

No. 2013-128-Appeal.
(PC 10-574)

Gregory Coogan     :

    v.       :

Cheryl Nelson et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Gregory Coogan          :

v.                            :

Cheryl Nelson et al.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The plaintiff Gregory Coogan (Coogan or plaintiff)

appeals from a grant of summary judgment by the Superior Court in favor of the defendants,

Cheryl Nelson and Mark Nelson, in this case arising out of a dog bite that occurred on the

defendants' property.  This case came before the Supreme Court for oral argument pursuant to an

order directing the parties to appear and show cause why this appeal should not be summarily

decided.  After carefully considering the written and oral submissions of the parties, we are

satisfied that cause has not been shown, and we will proceed to decide the case at this time.  For

the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

**I**

**Facts and Travel**

The underlying incident which has led to the instant case occurred on June 29, 2009.  The

plaintiff Coogan is employed as a driver for United Parcel Service (UPS).[1]  Sometime in the

afternoon of June 29, Coogan delivered a package to 113 Bates Trail in West Greenwich, Rhode

---

[1] The facts in this section have been culled from the parties' depositions, interrogatories, and affidavits submitted to the Superior Court on the motion for summary judgment.

Island, the residence of defendants, Cheryl and Mark Nelson. Although Coogan was familiar with Bates Trail from previous deliveries, he could not recall having ever previously delivered a package to this particular residence. On parking his vehicle, plaintiff stated, he beeped his horn and called out "UPS" in order to alert people that he was coming onto the property. He then made the delivery to the front door, rang the doorbell, and then walked away.

The defendant, Cheryl Nelson (Nelson),[2] stated that, upon hearing the doorbell, she opened the front door and saw plaintiff's back as he stepped off the deck onto the driveway. At the time, Nelson was accompanied by two of her dogs, a German shepherd by the name of Sammy and a rat terrier named Gizmo.

When he heard the door open, plaintiff turned around to see two dogs "charging [him]." He could hear defendant yelling but could not hear what she was saying over the noise of the dogs barking. Being nervous that he was going to be bitten, he tried to defend himself with a plastic device, which is used to record information about deliveries. Coogan described the device as being a "pretty hard, sturdy piece of plastic," about the size of an average laptop screen. Coogan stated that he was backing up while the dogs were circling him and that, at some point when he was in the driveway, approximately thirty yards away from his truck, he was bitten on the left forearm and the right leg. Although he was not certain which dog bit him, Nelson identified the dog that bit Coogan as being Gizmo, after that dog was hit by Coogan's "clipboard."[3]

After being bitten, plaintiff and defendant had a brief interaction, in which Coogan asked why Nelson had let the dogs out, to which Nelson responded that the dogs would have gotten out

---

[2] Although Mark Nelson is also named as a defendant in this case, he was not present for the incident.

[3] Nelson stated that to the best of her knowledge, both bites were on Coogan's arm.

anyway, through the "doggy door" that comes out from the basement into the yard.[4]  Afterwards, plaintiff drove back to the UPS office, where he filled out an incident report, and then was referred[5] to the Kent County Memorial Hospital, where he received stitches for the bite on his arm and treatment for what he described as "an inch laceration" on his knee.  The plaintiff was given a prescription for pain medication and did not resume full duty at work until sometime after the stitches were removed on July 10.

The plaintiff filed the instant complaint in the Providence County Superior Court on January 27, 2010, alleging personal injuries as a result of defendants' negligence in failing to secure their dogs.  On July 10, 2012, the Nelsons filed a motion for summary judgment, arguing that plaintiff had failed to prove that defendants had any knowledge of a vicious propensity on the part of the dog that bit him, while in the enclosure of defendants' property.[6]  See Montiero v. Silver Lake I, L.P., 813 A.2d 978, 981 (R.I. 2003).  In support of their motion for summary judgment, defendants attached two affidavits, one from Cheryl Nelson and the other from Wendy Tavares, the animal control officer for the Town of West Greenwich.  The Nelson affidavit stated that neither Sammy nor Gizmo had ever bitten anyone or showed vicious propensities prior to June 29, 2009.  The Nelson affidavit further explained that there had been one prior incident involving Gizmo that occurred in November 2000 when defendants' then-three-year-old son was playing with Gizmo and was scratched.  The defendant took her son to the emergency room as

---

[4] There appears to be some confusion in the record as to whether the basement "doggy door" exits onto the front yard or the backyard.  In her deposition, Nelson stated that the "doggy door" exited onto the front yard but her answers to plaintiff's interrogatories indicated that the "doggy door" exited into the backyard.  In any event, the record is clear that Coogan ventured onto defendants' property without seeing the "doggy door."

[5] Coogan originally went to Concentra Medical Center with a supervisor from UPS but, because of the depth of the wound, Concentra referred plaintiff to Kent County Memorial Hospital for treatment.

[6] "This knowledge requirement is commonly referred to as the 'one-bite rule.'"  Montiero v. Silver Lake I, L.P., 813 A.2d 978, 981 (R.I. 2003).

the scratch was near his eye, and the incident was duly reported to the West Greenwich Police Department. The Tavares affidavit confirmed that the West Greenwich Police Department was notified in November 2000 of a "dog bite incident" and, upon going to the residence to see the child and the dog, observed that the incident was not a dog bite but a scratch on the nose. The incident report noted that the wound was a "deep scratch" on the child's nose and that the "[d]og was placed under strict confinement for 10 days" as a result. Thereafter, the incident was deemed "closed."

The plaintiff objected to defendants' motion for summary judgment and the matter was heard on November 27, 2012. At the hearing, plaintiff noted that he had requested a continuance to give him time to obtain the Kent County Memorial Hospital records of the November 2000 incident. The hearing justice questioned whether plaintiff, as a UPS driver, should "expect dogs on a property," stating that dogs might be characterized as "part of the hazard of the profession[.]" The hearing justice stated that "[t]he real issue is whether this dog had a propensity for biting people," and noted that "[t]here is no one-scratch rule[;] there is a one-bite rule." The hearing justice found that "plaintiff was clearly within the enclosure of the defendant's property," and that "there is no genuine issue of material fact * * * about whether the defendant knew of the dog's vicious propensity." Accordingly, the hearing justice granted defendants' motion for summary judgment. Final judgment entered in defendants' favor on November 28, 2012. The plaintiff timely filed a notice of appeal to this Court.

The plaintiff thereafter filed a motion with this Court to supplement the record on appeal to include the records from Kent County Memorial Hospital relative to the November 2000 incident involving defendants' son and Gizmo. This Court granted plaintiff's motion in an order entered on December 17, 2013. The plaintiff's supplemental documents include a registration

- 4 -

record from Kent County Memorial Hospital of defendants' son for a "dog bite to face" and a nursing record initial assessment, citing the chief complaint as "cuts to face" after being "bit by dog." The plaintiff also submitted an Emergency Physician Record, subtitled "Animal Bite," which indicates a bite injury to the face received while "playing with or teasing animal," and identifies the animal as a "rat terrier."

## II

### Standard of Review

"[T]his Court reviews a trial justice's grant of summary judgment de novo." Swain v. Estate of Tyre, 57 A.3d 283, 288 (R.I. 2012). We apply the same standards and rules used by the trial justice. See Daniels v. Fluette, 64 A.3d 302, 304 (R.I. 2013). In addition, this Court has stated that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." NV One, LLC v. Potomac Realty Capital, LLC, 84 A.3d 800, 805 (R.I. 2014) (quoting Carreiro v. Tobin, 66 A.3d 820, 822 (R.I. 2013)). Accordingly, in deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. See Beauregard v. Gouin, 66 A.3d 489, 493 (R.I. 2013). "Summary judgment is appropriate when no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law." Swain, 57 A.3d at 288 (quoting Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 648 (R.I. 2011)).

# III

## Discussion

### A

### Whether the Incident Occurred Within the Dog Owner's Enclosure

In this case, we once again visit the well-traveled legal terrain of dog bite cases. These past cases have established our well-settled law regarding liability for acts of animal aggression, most commonly involving dogs. See Carreiro, 66 A.3d at 822 ("Liability for acts of canine aggression is well settled in Rhode Island."). General Laws 1956 § 4-13-16 imposes strict liability on dog owners if a dog "assaults, bites, or otherwise injures any person while traveling the highway or out of the enclosure of the owner or keeper of that dog * * *." (Emphasis added.) Strict liability does not apply, however, if the act occurred within the dog owner's enclosure. See Carreiro, 66 A.3d at 822-23. Accordingly, as this Court has acknowledged, "[p]recisely where the dog bite took place * * * can be outcome-determinative." Id. at 823.

On appeal, plaintiff argues that the hearing justice was clearly wrong in finding that the incident occurred within the dog owner's enclosure because the record indicates that defendants' residence had no fence, wall, or other tangible boundary. The defendants contend that Coogan's actions in beeping his horn and yelling out "UPS" in order to alert residents that he had entered onto the property indicate that he knew he was entering onto property where there might be a dog.

We begin with a brief discussion of what constitutes an enclosure under § 4-13-16. In answering this question, "there is a dog-eared decision from 1936 that gives us clear guidance." Carreiro, 66 A.3d at 823. In that decision, Wilbur v. Gross, 55 R.I. 473, 182 A. 597 (1936), this Court conducted an exhaustive analysis of the term "enclosure" for purposes of determining

liability for dog bites. This Court concluded that the central factor in the definition of an enclosure was "that there be something to give a man reasonable notice that he is entering upon occupied premises, where there may be a dog." Id. at 477, 182 A. at 599. More recently, we have defined an enclosure under § 4-13-16 as "a fence, physical obstruction or any other condition that gives reasonable notice to third parties that the area is private." Montiero, 813 A.2d at 981. On the other hand, "an individual who seeks canine companionship but at the same time fears litigation need not live in a residence which is completely encircled with such medieval trimmings as a moat or fortress-like walls." Bernhart v. Nine, 120 R.I. 692, 698, 391 A.2d 75, 78 (1978).

In any event, we do not need to definitively answer the question of whether the dog bite in the instant case occurred within the enclosure. As this Court has stated, "the 'purpose of the summary judgment procedure is issue finding, not issue determination.'" DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I. 2013) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008)). We must only determine whether the evidence in the record showed that a genuine issue of material fact remained as to whether defendants' driveway constitutes an enclosure for purposes of the statute.

The evidence in the record indicated that the premises were not marked by any fence, wall, or other tangible boundary. We are of the opinion that this is sufficient to establish a genuine issue of material fact as to whether plaintiff was within an enclosure at the time he was bitten. We emphasize that the existence of an enclosure for purposes of § 4-13-16 will usually be a fact-intensive inquiry. This Court was recently asked to consider whether one apartment within a multi-family apartment house was a "separate enclosure" from another apartment in the house. See Carreiro, 66 A.3d at 824. We concluded that, "[a]bsent an inquiry into whether the

second-floor apartment was kept locked and whether [the] defendant was excluded from the premises, it [wa]s impossible to determine whether the second-floor apartment was a separate enclosure" and that it was a "disputed question of material fact * * *." Id. Similarly, we are of the opinion that whether the driveway of defendants' unfenced yard should be considered to be within defendants' enclosure was a question of material fact that should be determined by a factfinder.

**B**

**Whether Defendants Knew of the Dog's Dangerous Propensities**

Even assuming, arguendo, that the hearing justice correctly determined that plaintiff was within the enclosure of defendants' property for purposes of § 4-13-16, we conclude that summary judgment in this case was improvidently granted.

Under our common law, a dog owner may be held liable for a dog bite occurring within the dog owner's enclosure if the plaintiff can "prove that the defendant knew about the dog's vicious propensities." Carreiro, 66 A.3d at 822-23 (quoting DuBois v. Quilitzsch, 21 A.3d 375, 380 (R.I. 2011)). This knowledge, or scienter, requirement is commonly called the "one-bite rule." See DuBois, 21 A.3d at 380.[7]

The plaintiff contends that there is a genuine issue of material fact as to whether defendants knew of any dangerous propensities of the rat terrier, Gizmo, based on the November 2000 incident when defendants' young son was scratched on the nose. The defendants argue that

---

[7] At oral argument, plaintiff also appeared to be arguing that the dog should not be given the benefit of the "one-bite rule" in this case because plaintiff was bitten in the course of his duties as a UPS delivery man. To the extent that plaintiff bases his argument on some special exception to be applied to him because of his profession, we note that this Court has previously addressed the question of making an exception to the "one-bite rule" to impose liability on dog owners when the injured person is an invitee and stated that "the common-law one-bite rule applies notwithstanding the injured person's status as an invitee." DuBois v. Quilitzsch, 21 A.3d 375, 381 (R.I. 2011).

the November 2000 incident involved only "an inadvertent scratch" which does not rise to the level of the one-bite requirement. Moreover, defendants emphasize that plaintiff was unable to identify which dog bit him and, consequently, could not establish that the same dog was involved in the November 2000 incident.

Although it would have been helpful for the hearing justice to have had the Kent County Memorial Hospital records that were ultimately filed with us, we believe that the evidence before the hearing justice at the time was sufficient to support a finding that a genuine issue of material fact existed as to defendants' knowledge of whether Gizmo had dangerous tendencies. Consequently, we do not believe it necessary to consider those records and will limit our analysis to the evidence the trial justice had at the time, i.e., the affidavits from Nelson and from the animal control officer for the Town of West Greenwich.

The affidavits included a copy of the incident report filed at the West Greenwich police station, identifying the incident as a "dog bite." The incident report clarified that "the wound was not a bite but a deep scratch on childs [sic] nose." We are of the opinion that this evidence was sufficient to create a genuine issue of material fact as to whether this prior act indicated a vicious or dangerous propensity on the part of Gizmo and whether defendants knew or should have known of this vicious propensity. See Ferrara ex rel. Commonwealth of Massachusetts Department of Social Services v. Marra, 823 A.2d 1134, 1138 (R.I. 2003) ("[T]he existence of the police report was enough evidence to raise a question of material fact about [the defendant's] knowledge of the vicious propensities of at least one of the dogs. Consequently, the question of [the] defendant's knowledge should have been resolved by a finder of fact after a trial on the merits * * *."). We emphasize that, in a motion for summary judgment, a trial justice is required to view the evidence and draw all reasonable inferences therefrom in the light most favorable to

the nonmoving party. See Derderian v. Essex Insurance Co., 44 A.3d 122, 126-27 (R.I. 2012). Moreover, we note that, as a general matter, summary judgment is rarely appropriate when the issue revolves around the existence of any particular state of mind, such as a defendant's subjective knowledge of a dog's vicious propensities. Cf. 27A Federal Procedure, § 62:671 at 422 (Lawyers Ed. 1996) ("[W]hether as a matter of fact any particular state of mind exists can seldom be considered to be beyond reasonable dispute because this depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving."). In viewing the evidence of this case in the light most favorable to plaintiff, we conclude that the prior incident involving Gizmo could permit a factfinder to conclude that Gizmo did have a vicious propensity and that defendants knew of it.

Furthermore, we note that the hearing justice appears to have misunderstood the requirements of the "one-bite rule" in stating that "[t]here is no one-scratch rule[;] there is a one-bite rule." The so-called "one-bite rule" is only a convenient shorthand expression which courts have adopted to describe the knowledge requirement of a prior incident involving a dog to indicate a vicious propensity. This Court has never stated that the only type of prior incident which would suffice to indicate a dog's vicious propensity is restricted to a bite. Indeed, we emphasize that the pertinent language of § 4-13-16 imposes liability when a dog "assaults, bites, or otherwise injures any person." (Emphases added.) We are of the opinion that other kinds of canine behavior that might cause injury to persons may clearly indicate a dog's vicious propensities. In this case, the evidence indicated that Gizmo had been involved in a prior incident that resulted in a "deep scratch" on a child's nose. A determination of whether the incident rose to the level of a vicious propensity was one that should properly have been made by a finder of fact after a trial. We emphasize that, in coming to this conclusion, we make no final

determination that Gizmo did, in fact, have vicious propensities or as to the defendants' ultimate liability for the plaintiff's injuries. That ultimate determination is not before us nor was it properly before the hearing justice on a motion for summary judgment. See Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000) ("The function of the motion justice considering a proposed summary-judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried. Rather, only if the case is legally dead on arrival should the court take the drastic step of administering last rites by granting summary judgment.").

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is vacated. The record in this case is remanded to that tribunal for further proceedings consistent with this opinion.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Gregory Coogan v. Cheryl Nelson et al.

**CASE NO:**     No. 2013-128-Appeal.
(PC 10-574)

**COURT:**     Supreme Court

**DATE OPINION FILED:**   June 16, 2014

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Luis Matos

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Adam J.Resmini, Esq.

For Defendants:  Kathleen Wyllie, Esq.